(Craft for the use of Powell *v.* Webster.)

---

[PHILADELPHIA, MARCH 29, 1833.]

{ CRAFT for the Use of POWELL *against* WEBSTER.

IN ERROR.

An assignment purporting to transfer all the right of the assignor in a sum of money charged, by agreement, upon land, in lieu of a widow's dower, the interest of which is to be paid to the widow during life, and the principal, after her death, to the assignor and others, is not within the meaning of the recording act of the eighteenth of *March,* 1775, and therefore it is not necessary that it should be acknowledged, or proved and recorded under that act, in order to preserve its validity against a subsequent assignment for a valuable consideration, without notice.

*It seems,* that an assignment of a mortgage, is not within the provisions of the act above mentioned.

*It seems* too, that it is not necessary that an assignment of a mortgage should be in writing.

A deed, purporting to convey all the right and title of the grantor to land of which he had previously parted with the fee simple, reserving only a right to a portion of the purchase money charged upon the land, does not pass his interest in the money so charged.

THIS case came before the court on a writ of error to the Court of Common Pleas of *Montgomery* County, in which it was an action of covenant, brought by *John Craft* for the use of *William Powell* against *William Webster.*

When the cause came on for trial, the counsel agreed that the jury should find a verdict in conformity to the opinion of the court, upon a case to be stated, in the nature of a special verdict. It was in substance as follows:

*Jonathan Craft* and *Mary* his wife, *George Craft, John Craft* and *Elizabeth* his wife, *Edward Holcombe* and *Ann* his wife, and *Jacob Craft,* by indenture dated the first of *April,* 1817, and duly recorded, granted and conveyed the premises therein mentioned, to *William Webster,* the defendant, in fee, " under and subject to the dower of

(Craft for the use of Powell *v.* Webster.)

*Esther Craft,* to be paid to the said *Esther Craft,* or to her assigns, out of the same, it being estimated at the sum of one hundred and forty-four dollars and seventeen cents, yearly, and every year hereafter, for and during the term of her natural life only, and also under and subject to the payment of the sum of two thousand four hundred and twelve dollars and forty-eight cents out of the same, at and immediately after the decease of the said *Esther Craft,* unto the heirs of *John Craft* aforesaid, deceased, and to the heirs of *Jacob Craft* aforesaid, deceased, their heirs, executors, administrators and assigns, according to their several and respective legal shares and proportions thereof, being part of the consideration money aforesaid : and also under and subject to the payment of the lawful interest of the above-mentioned sum of six hundred and forty-four dollars and seventeen cents, out of the same, to *Alice Craft* aforesaid, widow of *Jacob Craft,* deceased, yearly and every year, during the term of her natural life only, or to her assigns during the said term, *and also under and subject to the payment of the said sum of six hundred and forty-four dollars and seventeen cents, out of the same, at and immediately after the decease of the said Alice Craft, unto the said Jonathan Craft and Mary his wife, George Craft, John Craft and Elizabeth his wife, Edward Holcombe and Ann his wife, and Jacob Craft, or to their respective heirs, executors, administrators or assigns, according to their several and respective legal shares and proportions thereof, being part of the consideration money above mentioned."*

On the twenty-fourth of the second month (*February*), 1820, *John Craft,* one of the heirs and legal representatives of the said *Jacob Craft,* deceased, by an instrument of writing of that date, assigned, transferred, and set over, all his title and interest of, in and to the dower of *Alice Craft,* widow of *Jacob Craft,* and all claim to the right of said dower, to *Mary Johnson,* her heirs and assigns, to secure the payment of a certain promissory note for one hundred and fifty dollars, given by him to her, dated the first of *April,* 1818.   This instrument contained a proviso, that if the said *John Craft* should pay the note, with the interest due thereon, before the death of the widow, *Alice Craft,* the assignment was to be null and void.   Of this assignment *William Webster* had notice.

On the twenty-eighth of *February,* 1820, the said *John Craft,* by indenture of that date, duly recorded on the same day, for the consideration of one hundred dollars, granted, bargained and sold to *William Powell,* the real plaintiff in this cause, his heirs and assigns, " all the right, title, interest, claim and demand, of, in and to that certain messuage and tract of land, with the appurtenances, situate in the township of *Abington,* containing about twenty-nine acres, which he the said *John Craft* may have after the decease of *Alice Craft,* mother of the said *John Craft :* to have and to hold the said messuage and tract of land, and all and singular, &c., unto the said *William Powell,* his heirs and assigns, to the only proper use and

(Craft for the use of Powell *v.* Webster.)

behoof of the said *William Powell,* his heirs and assigns'forever," with general warranty.

*William Webster,* the defendant, had notice of this deed to *Powell.* The assignment from *John Craft* to *Mary Johnson,* was not recorded, and neither *Mary Johnson* nor *William Powell* had any notice of the conveyance to each other respectively, at the time of the execution of those instruments respectively, other than the recording of the conveyance to *Powell.*

*Alice Craft,* the mother of *John Craft,* died before the commencement of this suit, and the note of *John Craft* to *Mary Johnson* remained unpaid. The action was brought to recover the share of *John Craft,* in the sum of six hundred and forty-four dollars and seventeen cents, above mentioned, with interest from the time of the decease of *Alice Craft.*

It was agreed,'that if, upon the case thus stated, *William Powell* was entitled to the fund in the hands of the defendant, in preference to *Mary Johnson,* a verdict and judgment should be entered in favour of the plaintiff; if otherwise, for the defendant.

The jury found a verdict for the defendant, under the following opinion, which was delivered by

Fox, President.—As I shall decide this case, there is but one question necessary for me to determine, which is, was it necessary that the assignment from *John Craft* to *Mary Johnson,* dated the twenty-fourth of *February,* 1820, should have been recorded in the office for recording of deeds and mortgages in *Montgomery* county, in order to make it effectual against the subsequent deed of assignment to *William Powell,* dated the twenty-eighth of *February,* 1820 ? It was not necessary so to record it, and the jury will find a verdict under the agreement of the parties, for the defendant.

The error assigned in this court, was in the opinion of the Court of Common Pleas.

*Rawle, Jun.* for the plaintiff in error.—The opinion of the court below, though apparently a decision upon only one of the instruments therein referred to, was in effect a decision on both, and presents two questions. *First,* Did the deed to *Powell* transfer the same thing that the assignment to *Mary Johnson* purported to transfer to her ? *Second,* Was the assignment to *Mary Johnson* such an instrument as the law requires to be recorded ?

The deed to *Webster* granted the premises conveyed to him expressly subject to the payment of the interest on the sum of six hundred and forty-four dollars and seventeen cents, to *Alice Craft* during her life, and after her death, to the payment of a proportion of it to *John Craft,* the nominal plaintiff. There was no personal covenant by the grantee for the payment of the principal or interest, but the land alone was charged with both. The assignment from *John Craft* to *Mary Johnson,* transferred all his interest in this sum

(Craft for the use of Powell *v.* Webster.)

to which he should be entitled at the death of *Alice Craft;* but this assignment was never recorded, and must therefore be postponed to that to *William Powell,* which transferred the same thing and was duly recorded.  Though the latter deed purports to be a convey-ance of the land itself, it is in effect, a transfer only of the money charged upon the land.  *Powell* paid for something, and *Craft* intend-ed to pass something, and the only thing he could pass by the description contained in the deed, was his share of the money.  This gave him an interest in the land itself, for it was charged upon it, and payable out of it alone.  He had no other interest in the land, and consequently must have intended to pass it.  This is clearly shown by his describing it as his interest in the land after the decease of *Alice Craft.*  The court will give to the deed such a construction as will effectuate the intention of the grantor, *ut res magis valeat quam pereat,* and unless it be so construed as to pass his interest in the money charged upon the land, the deed becomes nugatory.  The case of *M'Williams* v. *Martin,* 12 *Serg. & Rawle,* 269, is a prominent example of the anxiety of the court to give effect to a deed according to the intention of the parties, where that intention is ambiguously and inaccurately expressed.  If a mortgagee were to grant all his right, title, &c. in the mortgaged premises, it would operate as an assignment of the mortgage debt; and the cases are analogous.

If the deed to *Powell* was an assignment of *John Craft's* proportion of the money charged upon the land, it was entitled to a preference over the unrecorded assignment to *Mary Johnson.*  The first section of the act of 18th of *March,* seventeen hundred and seventy-five, *Purd. Dig.* 198, is very comprehensive, requiring " all deeds and con-veyances of, or concerning any lands, tenements, or hereditaments in this province, or whereby the same may be in any way affected in law or equity" to be recorded within six months after their execution in the manner therein directed, and declares, that every such deed or conveyance which shall not be so recorded, " shall be adjudged frau-dulent and void against any subsequent purchaser or mortgagee for valuable consideration, unless such deed or conveyance be recorded as aforesaid, before the proving and recording of the deed or convey-ance, under which such subsequent purchaser or mortgagee shall claim."  Does the instrument in question concern land or affect it in law or equity ?  It scarcely requires an argument to prove so obvious a truth.  What was the interest to be affected ?  *Alice Craft* was enti-tled to dower in the land of her husband, which, after her death, was to go to his heirs.  The land is sold, and the parties agree that the es-timated value of the dower shall remain a charge upon the land in the hands of the purchaser.  The claim of the heirs had nothing of a personal character about it : it was bound up in the land itself, which alone could be resorted to.  The land thus charged, would pass into the hands of every successive grantee, against whom, however, no personal claim could be asserted.  For the satisfaction of this claim, the land might be sold, or it might be recovered in ejectment; conse-

(Craft for the use of Powell *v.* Webster.)

quently every assignment of such an interest, was a conveyance which affected the land, since it transferred from the assignor to the assignee, the right of selling, or obtaining possession of the land itself. It is at least, as deep and abiding an interest, as a mortgage, every assignment of which must be recorded. The case comes within both the spirit and the words of the act of 1775, the object of which, as declared in the preamble, was to prevent secret conveyances and fraudulent incumbrances, and of course to prevent the secret and fraudulent transfer of incumbrances.

There is in principle no difference between a mortgage, and the incumbrance in question. The latter is fixed upon the land, and cannot be known to exist, unless actual notice be given, or it be recorded. If it be not recorded, a man may assign it, and receive the value of it, as often as he pleases. Here a palpable fraud was practised on *Powell*, and may be practised on others. He had no notice of the assignment to *Mary Johnson*, and without notice he ought not to be affected.

*Potts*, for the defendant in error.—The assignment to *Mary Johnson*, does not fall within the provisions of any of the recording acts in force in Pennsylvania. The act of twenty-eighth of *May*, 1715, sec. 2, 3, *Purd. Dig.* 195, authorizes all deeds of bargain and sale, for the conveyance of lands, tenements and hereditaments, after having been acknowledged or proved in the manner therein prescribed, to be recorded. The eighth section of the same act, declares, that no deed or mortgage, or defeasable deed, in the nature of mortgages " shall be good or sufficient, to convey or pass any freehold or inheritance" in lands, unless acknowledged, or proved and recorded within six months from the date thereof. The act of the eighteenth of *March*, 1775, is somewhat broader in its terms, but this act also relates exclusively to the conveyance of lands by deed, as is apparent from the first section, which requires all deeds and conveyances, (which are convertible terms,) of, or concerning lands, tenements, and hereditaments to be recorded in the county in which such lands, or hereditaments lie. The plain meaning of the act is, that conveyances of land, which in *England* would require to be accompanied by livery of seisin, shall be recorded in *Pennsylvania*. The assignment to *Mary Johnson* was not a deed, nor did it purport to pass a freehold, or inheritance in any lands, tenements or hereditaments. It was merely a transfer of a debt charged upon land, but gave no interest in the land itself. If it had been recorded, it would have acquired no additional validity, for the defective recording of a deed, which the law requires to be recorded, or the recording of a deed which the law does not require to be recorded, is a nullity, and does not operate as constructive notice. It is a mistake to suppose that there was no personal liability on the part of *Webster*. The grantors, in their deed to him, passed all their interest in the land, and reserved nothing but the consideration money; consequently, if the land had been sold for a

(Craft for the use of Powell *v.* Webster.)

sum not sufficient to pay the whole amount of the charge, he would have been personally liable for the balance. The charge resembled a judgment, with which the recording acts having nothing to do. It created no interest in the land which could be levied upon. *Morrow* v. *Brenizer*, 2 *Rawle*, 188. But conceding it to be analogous to a mortgage, it does not follow, that every assignment of it must be recorded. There is no law which requires an assignment of a mortgage to be recorded ; and it is not usual to record such an assignment. As to actual notice of the assignment to *Mary Johnson*, *Powell* might have had it if he had used reasonable diligence. An inquiry of *Webster*, who had notice of it, would have put him in possession of the fact. Whatever puts a party on inquiry, amounts to notice. *Lodge* v. *Simonton*, 2 *Penn. Rep.* 439.

But it is a sufficient answer to the claim of *Powell*, that his deed and the assignment to *Mary Johnson*, purported to pass different things. His was for the land itself; hers for a debt charged upon the land. No question therefore under the recording acts, arises in the case.

*Kittera* on the same side was relieved by the Court.

The opinion of the Court was delivered by

KENNEDY, J.—This case was removed by writ of error from the Court of Common Pleas, of *Montgomery* County. It is an action of covenant commenced there by the plaintiff in error, to recover from the defendant in error the one-fifth of six hundred and forty-four dollars and seventeen cents, with interest from the time of the death of a certain *Alice Craft.*

On the trial of the cause in the court below, it appeared that *John Craft*, the nominal plaintiff, in conjunction with his wife, and his brothers *Jonathan Craft* and his wife, *George Craft*, *Jacob Craft*, and his brother-in-law, *Edward Holcombe* with his wife *Ann*, a sister of the said *John, Jonathan, George*, and *Jacob*, all children and heirs-at-law, of *Jacob Craft*, deceased, by their deed of indenture, bearing date the first day of *April*, 1817, in consideration of one thousand nine hundred and sixty-eight dollars and thirty-five cents, to them paid by *William Webster*, the defendant, at, and before the ensealing and delivery of the said indenture, and in consideration of the further sum of *six hundred and forty four dollars and seventeen cents, to be paid* to them, their heirs, executors, administrators or assigns *by the said William Webster, his heirs, executors, administrators*, or assigns, according to their several and respective legal shares and proportions therein, at, and immediately after the decease of the said *Alice Craft*, (widow of the said *Jacob Craft*, deceased), and also for, and in consideration of the further sum of *two thousand four hundred and twelve dollars, and forty-eight cents*, to be paid to the heirs of *John Craft*, deceased, (therein previously mentioned,) and to the heirs of the said *Jacob Craft* deceased, their heirs, executors, administrators, or assigns, by the said *William Webster*, his heirs, executors, administrators or

(Craft for the use of Powell *v.* Webster.)

assigns, according to their several and respective legal shares, and proportions therein, at and immediately after the decease of *Esther Craft*, (therein previously mentioned) widow of the said *John Craft*, deceased, did grant, bargain, sell, release and confirm, unto the said *William Webster*, his heirs and assigns, two messuages, and five lots, or pieces of land, therein particularly described, containing twenty-two acres, and eighty-five perches, more or less, to have, and to hold the same with the appurtenances, unto the said *William Webster*, his heirs and assigns, to, and for the only proper use and benefit of him, and them, for ever, *under* and *subject, inter alia, to the payment of the said sum of six hundred and forty-four dollars, and seventeen cents, out of the same*, at, and immediately after the death of the said *Alice Craft*, unto the said *John*, the plaintiff, *Jonathan Craft*, *George Craft*, *Jacob Craft*, and *Edward Holcombe* and his wife, or to their respective heirs, executors, administrators or assigns, according to their several and respective legal shares and proportions thereof, *being part of the consideration money before mentioned.*   *Alice Craft*, the widow of *Jacob Craft*, deceased, had a right of dower in the property conveyed to *William Webster*, and he was to retain the *six hundred and forty-four dollars and seventeen cents*, in his hands, until her death, and to pay to her six per cent. interest upon it annually, during her life, in satisfaction and in lieu of her dower.

On the twenty-fourth of *March*, 1820, *John Craft*, the nominal plaintiff, by his deed to secure to one *Mary Johnson* a debt of *one hundred and fifty dollars* with some interest due upon it, assigned to her all his right and claim to this *six hundred and forty-four dollars and seventeen cents;* and four days afterwards, on the twenty-eighth of the same month, by his deed of indenture acknowledged in due form, and recorded on the same day, in consideration of *one hundred dollars* therein mentioned, and acknowledged to have been received by him of *William Powell*, for whose use this action was brought, granted, bargained and sold, to the said *William Powell*, his heirs and assigns, all his right, title, interest, claim and demand, of, and in that certain messuage and tract of land, with the appurtenances, situate, &c. containing twenty-nine acres, be the same more or less, which he might have after the death of *Alice Craft*, his mother, (meaning the same land conveyed as above mentioned to the defendant,) to have and to hold the said messuage and tract of land, with the appurtenances, unto the said *William Powell*, his heirs and assigns forever; to which there is added a covenant of general warranty on the part of *John Craft*, the grantor, for the title to the said messuage and tract of land, with the appurtenances.

*Alice Craft*, upon whose death the *six hundred and forty-four dollars and seventeen cents* were to be paid by the defendant, died before the commencement of this action.

The instrument or deed by which *John Craft* assigned his right in the *six hundred and forty-four dollars and seventeen* cents to *Mary Johnson*, was never recorded, but notice was given of the assignment

(Craft for the use of Powell *v.* Webster.)

of it immediately to the defendant, who had notice likewise given him of the deed from *Craft* to *Powell.*

Upon this state of facts appearing on the trial, the defendant alleged that he was bound to pay the money demanded to *Mary Johnson*, and that *William Powell*, the real plaintiff in this action, had no right to demand, receive or prosecute this suit for it.    The plaintiff however contended, that as *Mary Johnson* had never put her assignment upon record, and that he, *William Powell*, being an innocent and *bona fide* purchaser of the claim without notice of the assignment to *Mary Johnson*, it, as against him, was therefore void, and he entitled to receive the money ; and prayed the court to direct the jury accordingly ; but the court told the jury, that it was not necessary that *Mary Johnson's* assignment should have been recorded in order to make it good against the plaintiff *William Powell's* claim, and the jury found a verdict in favour of the defendant.    It is the charge of the court below in this particular that is complained of, and has been assigned for error.

It is argued by the counsel for the plaintiff in error, that the assignment of the claim in dispute by *John Craft* to *Mary Johnson*, is embraced within the terms of the act of the 18th of *March*, 1775, entitled, "A supplement to the act, entitled 'An act for acknowledging and recording of deeds,'" the first section of which declares, that "all deeds and conveyances which from and after the publication hereof, shall be made and executed within this province, of or concerning any lands, tenements or hereditaments in this province, or whereby the same may be any way affected in law or equity, shall be acknowledged, &c. and shall be recorded in the office for recording of deeds, in the county where such lands or hereditaments are lying and being, within six months after the execution of such deeds and conveyances ; and every such deed and conveyance that shall at any time after the publication hereof be made and executed, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration," &c.    The counsel for the plaintiff contends, that this assignment is "of or concerning land," and that land is "affected" by it, and that it therefore comes expressly within the provisions of the act ; that the claim itself is in every respect like a mortgage, and ought to be considered as if it were such ; and that the assignments of mortgages upon lands lying within this state, have ever been thought to fall within the provisions of the recording act, and have been in the city and county of *Philadelphia* almost universally recorded under it.

The practice may be as stated, and I do not feel inclined to condemn it, but still I cannot give my assent to the proposition that the assignment of a mortgage is embraced within the terms of the recording act, or that it is necessary under that act to have it proved and recorded, in order to preserve its validity against a subsequent assignment without notice, for a valuable consideration.

32

(Craft for the use of Powell *v.* Webster.)

A mortgage in *England* is only a personal contract, and the mortgagee has no interest beyond his money. *Pre. in Ch.* 99. *Wilmot on Mort.* 4. The mortgagor has the *actual* estate in equity, which may be devised, granted and entailed; the entails may be barred by fine and common recovery. *Co. Lit.* 205. *n.* 1. *Moss* v. *Gallimore, Douglass,* 279. The land is held as a pledge or security for the payment of the money, and the mortgage though in fee (the legal estate in which descends to the heir at law of the mortgagee) is considered as personal estate in equity. *Ibid.* The mortgagor while in possession is deemed the owner of the estate. He gains a settlement by forty days residence on it, because the mortgagee notwithstanding the form, has but a chattel, the mortgage being only a pledge for the payment of his money. The legal title is in the mortgagee merely for a special purpose, and no further than to make it answer the end of a security for his money. *King* v. *St. Michaels, Doug.* 632. *Wilmot on Mortg.* 17.

Upon the same principle, of the mortgagor being considered the owner of the estate, it has been held, that if he devise it and afterwards pay off the mortgage money, and the mortgagee convey the estate to a trustee in trust for the mortgagor, it does not amount to a revocation of the will. *Doe* v. *Pott, et al. Doug.* 710. And even after the mortgagee has taken possession of the land without a foreclosure, he is still deemed in equity as having but a chattel, and the mortgage only a security. He can exercise no act of ownership over the property, which may incumber the mortgagor, such as making a lease of it for years to an under tenant. *Hungerford* v. *Clay,* 9 *Mod.* 1. 2 *Equi. Ca. Abr.* 610. And in equity he will be restrained from committing waste, although a mortgagee in fee. *Hanson* v. *Derby,* 2 *Vern.* 392. *Withrington* v. *Banks, et al. Ca. Ch.* 30. If the mortgage be of a leasehold estate, and the mortgagee procure a grant of a new term, after the old had expired, this will be a trust for the mortgagor. *Lee* v. *Lord Vernon,* 7 *Bro. P. Ca.* 432.

It is true, that if the mortgage money be not paid at the day appointed for that purpose, the estate granted by the terms of the mortgage, is said in law to become absolutely vested in the mortgagee, and if it be for a term of years, upon his death would vest in his executors or go to his administrators, and if a fee, would descend to his heir at law : That the payment of the mortgage money or tender of it afterwards with interest, would not be sufficient to reinvest the mortgagor with the legal title to the mortgaged premises; but that a re-conveyance from the mortgagee, his executors or administrators, if the estate be for a term of years, or his heir at law, if a fee, is indispensably necessary to effect this : That formerly this reinvestiture of title, could only be compelled by application to a court of equity, but now the courts of common law by the stat. of 7 *Geo.* 2, c. 20, in cases of suits brought on mortgage-bonds, or for the recovery of the possession of mortgaged lands, are authorised to constrain the mort-

(Craft for the use of Powell *v.* Webster.)

gagees to accept the principal and interest due on the bond or mortgage with costs, to stay them from proceeding to judgment therein, and to compel them to reconvey the mortgaged lands. It would also seem to be, that if a mortgage in fee has become forfeited, and the mortgagee has taken possession of the land, he may dispose of it by will as real estate. *Noy* v. *Mordaunt,* 2 *Vern.* 581. *S. C. Pre. Ch.* 265. But unless it should clearly appear to have been his intention to dispose of it as real estate, it will be considered personal. Or if he sell the land as a fee simple estate absolutely, and the vendee die, it, as between the executor and heir of the vendee, shall go to the heir. *Colt* v. *Iles,* 1 *Vern.* 271. But in all cases where the mortgagee in fee, is not in possession, and the equity of redemption not foreclosed or released, his estate is considered personal. *Fisk* v. *Fisk, Pre. Ch.* 11. *S. C.* 2 *Eq. Ca. Abr.* 429, *pl.* 4. *Audly* v. *Audly,* 2 *Vern.* 192. *Howel* v. *Price,* 1 *P. Wms.* 291. *Attorney General* v. *Vigor,* 8 *Ves.* 256. A devise " of all my lands" will not pass the interest of the mortgagee in fee, in the land so mortgaged to him. *Winn* v. *Littleton,* 1 *Vern.* 3. Nor will a devise " of all my lands, tenements and hereditaments," be sufficient, where the mortgage was forfeited at the time of making the will, and the equity of redemption foreclosed or released afterwards. *Strode* v. *Russell,* 2 *Vern.* 621.

I may observe here, that although a mortgagee in fee, may by his will dispose of his interest in the mortgaged lands as real estate, yet that does not prove its character to be real estate, nor that it is not purely personal, because a testator may direct his executors to invest money due to him upon bond or otherwise, in the purchase of land, to be conveyed to *A. B.* in fee, and if after the death of the testator, and before the purchase is made by the executors, *A. B.* dies also, the money so directed to be laid out for the use of *A. B.* cannot be claimed by his executors or administrators, but will belong to his heirs at law, the same as if it were real estate. *Edwards* v. *Warwick,* 2 *P. Wms.* 171. *Beauclerk* v. *Mead,* 2 *Atk.* 170. So the testator may impress the character of personalty upon his real estate by his will, as if he devises it to his executors, to be sold by them, and directs the money arising from the sale thereof, to be distributed among several persons, naming them, or to be added to his personal estate, and considered as part of it. *Lord Bristol* v. *Hungerford, Pre. Ch.* 81. *Craig* v. *Leslie,* 3 *Wheat.* 563. In all cases, however, where the mortgagee in fee, dies without making any disposition of the mortgage by will or otherwise, if the mortgagor wish to redeem, he must pay the mortgage money and interest to the personal representatives of the mortgagee, and not to his heir at law, although he may be in actual possession of the land. 1 *Equi. Ca. Abr.* 326–7. *pl.* 2, 3, 4, 5.

Although upon the mortgagee in fee's dying in the actual possession of the mortgaged premises, his heir at law, in *England,* will succeed to the possession of them ; or in case of the mortgagor's being in the possession, the heir of the mortgagee, if the mortgage be forfeited, may recover the possession from the mortgagor by ejectment unless

(Craft for the use of Powell *v.* Webster.)

he will pay the mortgage money, yet the land in his hands is but a pledge which he holds in trust for the executors, until the money shall be paid, when he is bound to reconvey it to the mortgagor. 1 *Eq. Ca. Abr.* 326-7, *pl.* In *Martin* v. *Mowlin,* 2 *Burr.* 978-9, Lord MANSFIELD, in speaking of a mortgage, which was the subject under consideration in that case, gives a summary of the law as it was then understood in *England* in regard to a mortgage, where he says, it " is a *charge* upon the land; and whatever would give the *money,* will carry the estate in the land *along with it,* to every pur · pose. The estate in the land is the *same thing* as the money due upon it. It will be *liable to debts;* it will *go to executors;* it will pass by a will *not* made and executed with the solemnities required by the *statute of frauds.* The *assignment of the debt,* or *forgiving it,* will draw the *land* after it as a *consequence;* nay, it would do it, though the debt were forgiven only by *parol,* for the right to the land would follow, notwithstanding the statute of frauds." Mr. Judge THROWBRIDGE, has in his reading on the law of mortgage, taken exception to some of Lord MANSFIELD's positions, laid down in this passage just quoted. See 8 *Mass. Rep.* 553, Appendix. But it may be observed, that the doctrines of *Littleton* and *Coke* on the subject of mortgages, ought not to be adopted as the test by which the improvements of Lord MANSFIELD's day in the law on that branch of it, are to be either approved or condemned. 4 *Kent's Comm.* 187-8.

Judging of the nature, character and effect of a mortgage from the authorities referred to, and supposing it to be in all respects the same in this state that it is in *England,* it appears to me, that the assignment of it would not come within that part of the recording act which has been recited.

· But if there remained a doubt on this point, a due consideration of our acts of assembly in respect to mortgages, will be sufficient, I think, to remove it. The provisions which have been thereby made for taking mortgaged lands in execution, and selling them by the sheriff or coroner, for such estates as are mentioned in the mortgages respectively, where default has been made in paying the debts intended to be secured by them, and again for having satisfaction entered upon the margin of their records where they have been paid, prove, to my mind, that a mortgage *is* not to be considered as conveying any estate or interest whatever in the land from the mortgagor to the mortgagee; and that the owner of land in fee who has mortgaged it, whether for a term of years, or in fee, is still, notwithstanding, the legal owner of it, and must be so considered, until he shall have disposed of it, or it shall be taken in execution, and sold from him. The mortgage is merely a lien upon his land, as a security for the payment of the money or fulfilment of some engagement therein mentioned. The mortgagee has no subsisting interest in the land, which he can convey either absolutely, conditionally or qualifiedly ; or even mortgage to a third person. The mortgage is purely an incident to the debt, as completely so, as the bond is to the debt that it has been

(Craft for the use of Powell *v.* Webster.)

given to secure the payment of, and its existence cannot possibly be imagined without the debt.    If the debt be paid at any time, either before, at, or after the day assigned for that purpose, or be released or extinguished, the mortgage thereby becomes a perfect nullity, the land discharged of the incumbrance ; the mortgagor is as much the legal owner of it, as if the mortgage had never been made.    A reconveyance from the mortgagee to the mortgagor in order to perfect his investment of title to the land, is not deemed requisite, because the mortgagee is not considered as ever having had any actual right to the land to make a reconveyance necessary.    Such, I think, was the understanding of the legislature in 1715, when they passed the act for acknowledging and recording of deeds; and again, in 1823, when they passed an act relative to mortgages.    By the 9th section of the first act, and the first and second sections of the latter, mortgagees are required upon being paid the amount of the mortgage money, whenever that may be, to enter satisfaction upon the margins of the records of their respective mortgages; and in case of neglect or unwillingness to do so, a mode is provided for enforcing it.    But a deed of reconveyance from the mortgagee to the mortgagor, such as is deemed requisite in *England,* to reinvest the mortgagor with his title to the land, is not mentioned in these acts; had it, however, been considered in the slightest degree necessary, we must suppose that it would have been noticed and provided for by the legislature when they were engaged in legislating specially for the security of a mortgagor, against a satisfied mortgage.    They no doubt thought, and very correctly too, that the act of 1705, which I shall notice presently, had prescribed and limited the effect of mortgages in such a way as to make a provision for a reconveyance nugatory, as nothing was ever vested in the mortgagee by virtue of the mortgage for it to operate on.    The only thing which might seem to contradict the idea that no interest in the land passes from the mortgagor to the mortgagee, by the execution of the mortgage, is contained in the eighth section of the act of 1715, which declares, that " no deed or mortgage, or defeasible deed in the nature of mortgages, hereafter to be made, shall be good or sufficient to *convey* or *pass* any *freehold* or *inheritance,* or to *grant* any *estate therein* for life or years, unless such deed be acknowledged or proved, and recorded," &c.    I however, do not think that this section of that act is to be understood as necessarily implying that every valid mortgage must pass or convey in the land the estate therein expressed from the *mortgagor to the mortgagee.* It may be construed as declaring, that unless the mortgage be proved, acknowledged and recorded, &c. it shall not be sufficient under the provisions of the act of 1705, which prescribes a judicial course of proceeding, whereby the land mortgaged, when default has been made by the mortgagor, in paying the money for the space of twelve months after it has become payable, may be taken in execution and sold ; and by the sixth section of this act, it is enacted, that " when the said lands and hereditaments shall be so sold or delivered as

(Craft for the use of Powell *v.* Webster.)

aforesaid, the person or persons to whom they shall be so sold or delivered, *shall* and *may hold* and enjoy the same, with their appurtenances, for such *estate* or *estates* as there were sold and delivered, clearly discharged," &c. and by the eighth section, "that no sale or delivery which shall be made by virtue of this act, shall be extended to *create* any *further term* or *estate* to the vendees or mortgagees or creditors, than the lands or hereditaments so sold or delivered, shall appear to be *mortgaged for*, by the said respective *mortgages* and *defeasible deeds.*" The course of proceeding authorised by this act, is the only one by which the mortgagor can be divested of his right and title to the land mortgaged. It is the sale under it which *creates* the estate and passes it to the vendee; or the delivery of the land under it to the mortgagee or creditor, which creates and passes the estate to him, and the mortgage limits merely the extent of the estate that is so passed or transferred in either case. This construction seems to me to comport best with the nature and effect of the proceeding that is directed by this act, as also with the whole spirit of the act itself.

The writ which the mortgagee, in case of a default on the part of the mortgagor to pay the money, is thereby authorised to sue out, is a *scire facias*, requiring the officer to whom it shall be directed, " to make known to the mortgagor, his heirs, executors or administrators, that he or they be and appear before, &c. to show cause, if any thing he or they have to say, wherefore the said *mortgaged premises* ought not to be seized and *taken in execution* for payment of the said mortgage money, with interest," &c. and in case no sufficient cause be shown, judgment is directed to be rendered by the court, " that the plaintiff in the *scire facias* shall *have execution* by *levari facias* to the proper officer, by virtue whereof the said *mortgaged premises* shall be taken in execution, and exposed to sale in manner aforesaid, and upon sale conveyed (by the officer making the sale) to the buyer or buyers thereof, &c. but for want of buyers, to be delivered *to the mortgagee* or *creditor*, in manner and form, as herein above directed, concerning other lands and hereditaments to be sold, or delivered upon executions for other debts or damages." By the proceedings under this act, the mortgaged premises are to be sold—surely not as the property of the mortgagee, because nothing could be more incongruous than for a *creditor* to cause his own property to be sold, perhaps sacrificed, to pay the debt of his debtor; it must then be, as the property of the mortgagor who is the debtor, that they are to be sold. It is not the equity or right of redemption either, that is to be sold, but such estate as is described in the mortgage. If, however, a sale cannot be effected for want of buyers, then the mortgagee or creditor, may have so much of the mortgaged premises, as will be equal in value to the amount of his debt delivered to him, to hold for such estate as is described in the mortgage. By this operation, the estate is transferred to him, which militates against the idea of his

(Craft for the use of Powell *v.* Webster.)

having been invested with the estate described in the mortgage by the execution of it.

The heir of the mortgagee in this state, has nothing to do with the mortgage, or the land upon which it was given; and whether it be in fee, or for a term of years, the claim under it is purely personal, and belongs to the executors or administrators, as part of the personal estate of the testator or intestate, to be administered and accounted for by them as legal assets. They alone have authority to demand and receive the money due upon the mortgage. They may release, or assign it, although it be in fee; and their assignee may maintain an action of ejectment in his own name to recover the possession of the land, as was decided by this court in *Simpson* v. *Ammons,* 1 *Binn.* 175.

A mortgage, in *Pennsylvania,* is literally and legally now understood to be but a bare security for the payment of the money, or performance of other acts therein mentioned; and at most only a *chose in action;* although assignable, I admit, so as to enable the assignee of it, to maintain and prosecute in his own name a writ of *scire facias* upon it, under the provisions of the act of assembly of 1795, already noticed, authorising the mortgaged premises to be taken in execution, and sold for the purpose of making payment of the debt. For its being barely a security, I refer to the cases of the *Schuylkill Co.* v. *Thoburn,* 7 *Serg. & Rawle,* 419. *Simpson* v. *Ammons,* 1 *Binn.* 175. *Wentz* v. *Dehaven,* 1 *Serg. & Rawle,* 317. *M'Call* v. *Lenox,* 9 *Serg. & Rawle,* 304. 4 *Kent's Com.* 153–4. If the mortgagee held a real interest under the mortgage in the land, either of an equitable or legal character, it would be the subject of execution according to the cases of *Humphreys* v. *Humphreys,* 1 *Yeates,* 427, and *Hurst* v. *Lithgrow,* 2 *Yeates,* 24, where it is laid down, that all possible titles, contingent or otherwise, in lands where there is a real interest, may be taken in execution. But it was ruled by this court in *Rickert* v. *Madeira,* 1 *Rawle,* 325, that the interest of the mortgagee, whether the mortgage was legal or equitable, could not be taken in execution. Mr. Justice ROGERS, in delivering the opinion of the court in that case, says, " a mortgage must be considered either as a *chose in action,* or giving title to the *land* and vesting a real interest in the mortgagee. In the latter case it would be liable to execution; in the former, it would not, as it falls within the same reason as a judgment, bond or simple contract." And then he proceeds to show, as well by reason as authority, that it is merely a *chose in action* and therefore not liable to be taken in execution.

This being the character of a mortgage in *Pennsylvania,* it is not necessary that the assignment of it should be in writing, to satisfy either the requirements of the statute against fraud and perjuries, *Richards* v. *Syms,* 3 *Eq. Ca. Abr.* 617, *pl.* 2, or those of the common law. Debts or *choses in action* may be assigned for a valuable consideration by parol. *Fashon* v. *Atwood,* 2 *Ch. Ca.* 372. *Com. Dig. tit. Chan.* 2 *H.* page 370. (*Rose's Ed.*) *Prescott* v. *Hall,* 17 *Johns.*

(Craft for the use of Powell *v*. Webster.)

284.  *Briggs* v. *Dorr*, 19 *Johns.* 95.  The debt being every thing, and the mortgage barely a security for the payment of it, it follows of necessity, that whatever affects the debt, will produce a corresponding effect upon the mortgage.  If the debt be extinguished by any means, the mortgage will thereby become so likewise.  A parol forgiving of the debt accompanied by a delivery of the securities to the debtor or mortgagor, will be sufficient to extinguish the mortgage. *Richards* v. *Syms*, 2 *Eq. Cas. Abr.* 617. *pl.* 2.  *S. C. Barnard*, 90. *Atk.* 319.  *Con.* 225.  So a transfer of the debt will likewise be a transfer of the mortgage.  *M'Call* v. *Lenox*, 9 *Serg. & Rawle*, 304. 4 *Kent's Com.* 186, and the cases cited in the margin.  In short, an assignment by the mortgagee of his interest in the land without an assignment of the debt, is considered to be without meaning or use. 4 *Kent's Com.* 186.

Against all this, it has sometimes been objected, that as the mortgagee may maintain an action of ejectment against the mortgagor and take the possession of it from him, he must necessarily have a right to it of some sort.  This, however, may be tolerated on the ground of the land being considered in the nature of a pledge, and that as such he has a right to possess it, in order that it may be well taken care of, if for no other purpose, until he is paid his debt, but if he does take the possession, he will have to account to the mortgagor as to the owner of the land for the issues and profits.  A right to the possession is all that is necessary for supporting the action of ejectment; and a right to the land is not at all requisite.  A right to the posession of a security for the payment of money due, may exist in the creditor without either a general or special property in the thing retained, as against the debtor: such, for instance, is the lien of a factor upon the goods of his principal, which gives him a right of retaining the goods of his principal until his demands in that capacity are satisfied; yet it has been held, that as against his principal it gives him no general or special property.  *Meany* v. *Head*, 1 *Mason*, 319.

I may here observe, also, that since the passage of the act of 1705 already recited and commented on in part, which has given the mortgagee a remedy that is not only final and perfect, but at the same time calculated to afford him every possible advantage that he could wish for in raising his money by a sale of the land and buying it himself if he chooses, the propriety of permitting him without such sale by ejectment to turn the mortgagor out, and to take possession of the land himself, has been denied.  Chancellor KENT, in speaking of it, very truly and justly says, " it not being a final remedy is vexatious, and the possession under it terminates naturally in a litigious matter of account and a deterioration of the premises."  4 *Kent's Com.* 150, in note; and it appears to me, ought not to have been allowed here since the act of 1705 came into operation.

Having, as I believe, shown that the assignment of a mortgage is not a " conveyance of or concerning land, or whereby the same may

(Craft for the use of Powell *v.* Webster.)

be any way affected in law or equity," (which are the words of the recording act,) it is not necessary that it should be recorded as required by that act to give it validity against a subsequent assignment made by the mortgagor to a third person, for a valuable consideration, without notice of the first. If the first assignment were in writing, proved and recorded, the recording could afford the assignee therein named no additional protection whatever, against a claim under a subsequent assignment made to another person by the mortgagor, because the recording of such an assignment not being authorized, could neither tend to support nor invalidate it.

What I have said on the subject of mortgages, may perhaps not have been necessary for the decision of the case before us, but I was led into it by the ingenuity and great earnestness with which the counsel for the plaintiff in error, endeavoured to assimilate the claim in controversy, to a claim for money secured by a mortgage upon land, as already mentioned.

The claim, however, arises out of a transaction different both in form and substance, as it appears to me, from a mortgage. The claim here is for part of the purchase-money of the land sold and conveyed by *John Craft*, the nominal plaintiff, in conjunction with others, as already stated.

By the terms of the deed of conveyance made to *Webster*, it is obvious, that the parties intended to make that portion of the purchase money which remained unpaid after the execution and delivery of the deed, a lien upon the land, and the money in dispute being a part of that portion, is of course a charge upon the land. *Webster* is doubtless bound personally also for the payment of it, although he gave no bond or note for that purpose. There is nothing in any part of the deed which tends in the least to show that it was the agreement or understanding of the parties that he was not to be personally responsible for the payment of the whole of the purchase-money. On the contrary, it is expressly mentioned, that it is *to be paid by Webster, his heirs, executors, or administrators.* Beside, the vendors having by their deed of conveyance, which is absolute and not conditional, parted not only with the possession, but also with all their right, title and interest in the land, in consideration of a certain sum of money, part of which was paid and the residue to be paid them by the vendee, nothing short of an agreement made to appear in very intelligible form, to that effect, ought to exempt the vendee from personal liability. Indeed, it is not pretended by the defendant himself, or his counsel in this case, that he is not personally bound for the payment of the money, but has been so argued by the counsel for the plaintiff, as an auxiliary to his main proposition, that the plaintiff has an actual interest in the land, notwithstanding the conveyance made to the defendant. The defendant, it seems, is willing to pay the money as soon as it shall be determined which of the persons contending for it, is entitled to receive it.

There are no words of either condition or reservation, as it appears

(Craft for the use of Powell *v.* Webster.)

to me, in the deed made by *John Craft* and others, to the defendant. They intended merely to make the unpaid part of the purchase money a charge upon the land, and with this view the land is conveyed subject to the payment of it; but to effectuate this design, it was not necessary that the vendors should make the conveyance conditional. The unpaid purchase money being made a lien upon the land by their agreement, the land could be made liable for it afterwards in the hands of a purchaser, in an action of debt, to be brought for that purpose by giving him notice, and making him a party to the proceeding, which generally answers a much better purpose for collecting money than the action of ejectment, and therefore ought to be preferred, even where the party may have his election to adopt and pursue either remedy.

*John Craft* then, having conveyed all his right, title and interest to, and in the land, to *William Webster*, had nothing in it that he could convey to *William Powell.* In his conveyance to *Powell,* his claim to the money in dispute is not even mentioned, and cannot be considered as assigned thereby.

It is said, however, that he had no other interest or claim that could be connected with the land in any way, and therefore the deed made by him to *Powell,* ought to be so construed as to embrace it, according to the rule of *ut res magis valeat quam pereat.* In the construction of deeds, or instruments of writing containing the agreements of parties, some regard must surely be had to the established meaning of the words in which they are couched, but to give the construction asked for here, for the purpose of supporting *Powell's* claim, would be to overturn this principle of construction entirely, and to defeat the great end of committing such things to writing. What Chancellor KENT has laid down in respect to the assignment of mortgages, is perhaps more strikingly applicable to this case, than in the case of assigning a mortgage, which is this, " the assignment of the interest of the mortgagee *in the land,* without an assignment of the *debt,* is considered to be *without meaning* or use." 4 *Kent's Com.* 186.

It could certainly never have entered into the mind of any one, upon reading the deed from *Craft* to *Powell,* that the object of it was to transfer or to give a right to demand and receive the money sued for in this case. And had it been requisite to put the assignment of such a claim upon record, for the purpose of giving notice of it, this deed could have afforded none.

*Mary Johnson,* after obtaining her assignment, did all that either law or prudence required of her, in giving immediate notice of it to the defendant, who was to pay the money. She is not chargeable with leaving any thing in the possession of *John Craft* the assignor, that could enable him to practice a fraud upon others, by assigning this claim again to them. If *Craft* had held a note or bond for the payment of this money and *Mary Johnson,* after obtaining an assignment upon a separate paper, or merely a verbal assignment, had left

(Craft for the use of Powell *v.* Webster.)

the note or bond still in the possession of *Craft*, and he had after-wards assigned it to *Powell* for valuable consideration, without notice, a different question perhaps would have been presented. In the present case, if it was really the object of *Powell* in obtaining his deed of conveyance from *Craft*, to get an assignment of the claim sued for, he, as a prudent man, ought to have called upon the defendant before he concluded a contract with *Craft* for it; and if he had done so, doubtless as the defendant was advised of *Mary Johnson's* assignment, he would have told *Powell* of it, so that if *Powell* is likely to sustain a loss, it is chargeable in some degree to his own neglect and want of vigilance. Hence, if the deed by *Craft* to *Powell*, had embraced the claim sued for here, *Powell* must be postponed to *Johnson*, according to the maxim, of *qui prior est tempore potior est jure*.

The judgment of the court below is therefore affirmed.

Judgment affirmed.