United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 30, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 01-41398
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MALLORY GOSDEN-GOMEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
(No. CR-B-01-400)

_____

Before SMITH, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Mallory Gosden-Gomez ("Gosden") appeals his conviction under 8 U.S.C. § 1326 for being

an alien in the United States after previously being denied admission and excluded. For the following

reasons, we REVERSE his conviction.

## I. FACTS AND PROCEEDINGS

United States Border Patrol agents apprehended Gosden on July 18, 2001, near San Pedro,

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Texas. At that time, Gosden admitted to agents that he entered the United States through a river near San Pedro, Texas, without being inspected by an immigration officer. He further informed them that he was a citizen of Nicaragua, and that he had been deported several times, but he had not received a hearing, and he had a fear of persecution in his native country.

Records revealed that Gosden's interaction with the Immigration and Naturalization Service ("INS") dated back to June 26, 1982, when he submitted a request for asylum in the United States. The application showed that Gosden had entered the United States illegally, and that he had no criminal record.[1] The INS arrested Gosden on October 13, 1983, and released him on bond on October 21, 1983. The INS automatically terminated his application for asylum. After a change in venue, Gosden's deportation hearing was reset for December 4, 1984, in Houston, Texas. There was no evidence that Gosden received notice regarding the December 4 hearing. Gosden did not appear at the hearing, and was ordered deported ("the 1984 deportation order") in absentia based on his illegal entry. The actual warrant of deportation issued on May 9, 1985. The warrant was not executed until April 28, 1994, when the INS sent Gosden to Nicaragua. In the meantime, Gosden was convicted of several misdemeanors, including possession of marijuana and driving while intoxicated ("DWI").[2]

Following Gosden's removal from the United States in 1994, he married twice, both times to United States citizens. Gosden reentered the United States approximately a year after the INS deported him in 1994. Gosden's second wife, Linda Gomez, submitted an application to adjust

---

[1]At that time, the United States was granting Nicaraguans asylum.

[2]On January 31, 1996, Gosden pled guilty to third offense DWI, and was sentenced to sixty days in jail.

Gosden's status as a spouse of a United States citizen on August 7, 1997. The INS never adjudicated the application. While the INS researched the application, however, they paroled Gosden from December 30, 1997 through December 29, 1998 and granted him a work permit. On October 31, 1997, Gosden's counsel submitted an application to the Attorney General to request permission to reapply for admission into the United States after deportation or removal. There is no evidence that Gosden's application was either granted or denied by the Attorney General.[3] Later, when Gosden sought to renew his work permit, the INS discovered that he had been previously deported and had two drug convictions. Consequently, the INS reinstated the 1984 order of deportation and deported Gosden on March 18, 1999.

On September 11, 2000, an INS agent received information that Gosden had been arrested and was a citizen of Nicaragua. After learning that Gosden had previously been removed, the INS placed a detainer on Gosden. Gosden was indicted, tried by a jury, and convicted for illegal reentry into the United States after deportation. The court sentenced Gosden to six months in prison, and the INS deported him on March 22, 2001.

During trial, the court discovered that every one of Gosden's deportations were based on the December 4, 1984 deportation hearing in absentia and the 1984 deportation order issued pursuant to the hearing. As the Government's witnesses conceded, if the 1984 deportation order was invalid, then all of the other deportation orders following that order were also invalid. At the close of the Government's case in chief, the district court partially granted Gosden's motion for judgment of acquittal, ruling that the Government had not adduced sufficient competent evidence to show that

[3]The only evidence showing that Gosden's October 31, 1997 application to reapply for admission was never granted are the certificates of non-existence of any record of the INS granting Gosden permission for admission into the United States after deportation or exclusion.

Gosden had been previously *deported and removed* because Gosden's 1984 deportation order was invalid. With regard to the 1984 deportation order and the charge of being present in the United States after being deported and removed, the court stated:

> I am not going to leave to the jury to determine legally whether or not there was—inasmuch as all the testimony from the Government witnesses have been to the effect that all deportation [sic] have been predicated upon what happened in 1984, I am not going to leave the legal issue whether it was legal or not to the jury.
> . . .
> And although I am not convinced altogether that he was not given proper notice because they wouldn't have to give it to him in person . . . the Government's evidence did not show sufficient evidence that it was done consistent with what they had to do. I so find. I don't think, for example, there is any evidence to the effect that he was given appropriate notice by which he would have had a fair disposition of his application for asylum.

4 R. 256-57. The court ruled, however, that the Government could proceed on the theory of illegal reentry after having been *denied admission and excluded* from the United States. This was the basis upon which the jury returned a guilty verdict.

## II. STANDARD OF REVIEW

"The standard of review in reviewing the sufficiency of the evidence in a criminal case is whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." *United States v. Smith*, 296 F.3d 344, 346 (5th Cir. 2002) (internal quotations omitted). We view the evidence in the light most favorable to the verdict. *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995). We will reverse a conviction if the evidence, construed in favor of the prosecution, gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence. *United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003).

## III. DISCUSSION

Gosden raises five issues on appeal. Nevertheless, because Gosden's first issue for appeal is

4

dispositive of this case, we only address whether there was sufficient evidence to sustain his conviction.

Gosden's history with the INS spans over 20 years. Under the statutory framework before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), there were two ways of denying an alien the hospitality of the United States: deportation hearings and exclusion hearings. *Landon v. Plasencia*, 459 U.S. 21, 25 (1982). The type of hearing an alien received depended on whether he made an "entry" into the United States, or whether he was outside the United States awaiting entry. *Id.* at 26. When the IIRIRA went into effect, the focus of the inquiry was no longer whether the alien made an entry, but whether the alien had been admitted[4] to the United States. Post-IIRIRA, "[a]n alien present in the United States who has not been admitted or arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1).

The IIRIRA made a number of significant changes to immigration laws. *United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998). A change critical to this appeal concerns its modification of the language of § 1326(a). Whereas § 1326(a) once referred to aliens who have been "arrested and deported" or "excluded and deported", the IIRIRA substituted language referring to aliens who have "been denied admission, excluded, deported or removed". *United States v. Lopez-Gonzalez*, 183 F.3d 933, 935 n.5 (9th Cir. 1999) (citing 8 U.S.C. § 1326(a)). In *United States v. Pena-Renovato*, 168 F.3d 163, 164 (5th Cir. 1999), this Court noted that the IIRIRA provides that "any reference in

---

[4]Pre-IIRIRA, an alien was classified as admitted to the United States when he was inspected by an officer and permitted to enter. *See Carnejo-Molina v. INS*, 649 F.2d 1145, 1147 (5th Cir. Unit A July 1981).

law to an order of removal shall be deemed to include a reference to an order of exclusion and deportation or an order of deportation." *Id.* (citing IIRIRA § 309(d)). As such, this Court has implicitly recognized that the terms enumerated in § 1326(a) are equivalent.

Another notable IIRIRA modification in immigration law concerns 8 U.S.C. § 1229a(e)(2)(A). Section 1229a outlines procedures for an alien's removal from the United States. Under the IIRIRA, aliens seeking admission are placed in removal proceedings under § 1229a. By placing an alien in a § 1229a proceeding, the INS determines whether an alien is admissible under 8 U.S.C. § 1182(a). An alien is inadmissible if the INS determines the alien is removable. Section 1182(a), which addresses grounds by which an alien is inadmissible was modified by the IIRIRA, such that "is excludable" was substituted by "is inadmissible", IIRIRA § 308(d)(1)(B) (codified at 8 U.S.C. § 1182), thereby implying that the terms "excludable" and "inadmissible" are also equivalent terms. There was undisputed testimony at trial that both "deny admission" and "exclude" were the same. 4 R. at 252.

The Government concedes that there was insufficient evidence as a matter of law to sustain Gosden's conviction. The Government argues that the term "denied admission" under the IIRIRA refers to an alien who has been placed in a removal proceeding pursuant to § 1229a. At trial, there was no evidence that Gosden had been placed in a § 1229a removal proceeding and found inadmissible[5] under § 1182(a).[6] The Government did not present evidence at trial showing that

---

[5] "Inadmissible" is equivalent to the pre-IIRIRA term, "excludable". *United States v. Landeros-Mendez*, 206 F.3d 1354, 1356 n.1 (10th Cir. 2000) (citing 8 U.S.C. §§ 1182, 1251 (1994)).

[6] Each time Gosden was removed from the United States, the INS reinstated the 1984 order of deportation. 4 R. at 196-97, 200-02.

Gosden had been excluded pursuant to pre-IIRIRA procedures. Accordingly, the Government concluded t hat there was insufficient evidence to support Gosden's conviction for being "denied admission and excluded" from the United States.

We agree that there is insufficient evidence to sustain Gosden's conviction under the IIRIRA. There is no evidence that Gosden was ever deemed inadmissible by the INS. Under § 1225 (a)(1), Gosden would be considered an applicant for admission. There was no evidence that Gosden was ever placed in a § 1229a proceeding to determine his admissibility. Thus, he was never adjudicated as "inadmissible" under the IIRIRA and therefore was never "denied admission". Thus, because the INS never found Gosden inadmissible under the IIRIRA, the INS also could not have found Gosden "excludable" under the criteria set forth under § 1182(a). *See Landeros-Mendez*, 206 F.3d 1354, 1356 n.1.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE Gosden's conviction for being present in the United States after being denied admission and excluded.

7