Jaime SANCHEZ–DOMINGUEZ and Alicia Acosta de Sanchez, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 84–4839.

United States Court of Appeals, Fifth Circuit.

Jan. 17, 1986.

David W. Chew, El Paso, Tex., for petitioners.

Robert L. Bombough, Director, Office of Immigration Litigation, Civ. Div., Hillary B. Burchuk, Allen W. Hausman, Asst. Director, Alison R. Drucker, Richard M. Evans, Attys., Washington, D.C., David H. Lambert, Dist. Dir., I.N.S., New Orleans, La., Alfred Giugne, Dist. Dir., U.S. I.N.S., El Paso, Tex., for respondent.

Before GARZA, TATE and JOHNSON, Circuit Judges.

TATE, Circuit Judge:

The petitioners Sanchez, husband and wife and natives of Mexico, entered the United States illegally in 1973 and have continuously resided here since that time except for an overnight stay in Mexico in July, 1979. During their residence here, the Sanchezes have had four children, all United States citizens. Since his entry, Mr. Sanchez has been gainfully employed at relatively high wages (with consequent substantial federal income tax payments), owns his own home, and has accumulated property. The brothers and sisters of both petitioners all live in the United States.

The Sanchez husband and wife petition this court, *see* § 106(a) of the Immigration and Nationality Act ("the Act"), 8 U.S.C. § 1105a(a), for review of the order of the Board of Immigration Appeals ("the Board"), that denied their request for suspension of deportation. Constrained by *Immigration and Naturalization Service v. Phinpathya,* 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984), we affirm.

I.

After a ruling to show cause was issued charging deportability, the case was set for hearing on October 19, 1983. On that date, both the petitioners and the Immigration and Naturalization Service ("the Service") entered into a stipulation conceding deportability, requesting the Immigration Judge to delay an order of deportability in order to let the petitioners apply for relief from deportation. The order of October 19 therefore adjourned the cause until December 19, 1983, during which period the petitioners' written application for relief could be received.

Both the Service and the petitioners contemplated that an action for relief would be filed and favorably acted upon under Section 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1). This provides that the Attorney General in his discretion may suspend deportation of an otherwise deportable alien who (1) "has been *physically present in the United States for a continuous period of not less than seven years;*" (2) "is a person of good moral character;" and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child...." (Emphasis added.)

The Sanchezes undeniably met the second and third conditions. Under the flexible interpretation previously accorded since

1967 by the Service to the first (or seven-year) condition, (*but,* see below, displaced by *Phinpathya, supra* ), the Sanchez's brief over-night transient stay in Mexico did not interrupt their ten years of continuous residence in the United States.

As the Immigration Judge stated in his opinion below:

> The respondents [the Sanchezes] were reasonably sure that their case was meritorious. At the time that the stipulation was entered into granting the respondents time to prepare and file their applications, it was well established that a casual and innocent visit outside of this country of short duration did not break the continuity of the physical presence under the above quoted section because of the well-known *Fleuti* doctrine. *Rosenberg v. Fleuti,* 374 U.S. 449 [, 83 S.Ct. 1804, 10 L.Ed.2d 1000] (1963). This doctrine had been applied holding the matter as evidentiary in each case on the issue of whether a departure and re-entry meaningfully interrupts the continuous physical presence under Section 244(a)(1) of the Act.

However, as the Immigration Judge further stated:

> Since the hearing, the United States Supreme Court in its decision in *INS v. Phinpathya,* No. 82–91, U.S. Supreme Court (January 10, 1984) [464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401] has decided that the three criteria contained in the statute must be met before the Attorney General may exercise his discretion to suspend deportation. The Supreme Court established the rule that strict threshold criteria be met as a condition

precedent to the exercise of the discretion to grant suspension of deportation. The Supreme Court has distinguished the *Fleuti* decision holding that it does not apply to 244(a)(1) matters.

## II.

However, the majority opinion of the Court of January, 1984 in *Phinpathya* rejected that application of Section 244 discretionary relief. The Court stated that a flexible interpretation of the seven-year requirement

> ignores the plain meaning of § 244(a)(1) and extends eligibility to aliens whom Congress clearly did not intend to be eligible for suspension of deportation. Congress meant what it said:
>
>> otherwise deportable aliens must show that they have been physically present in the United States for a continuous period of seven years before they are eligible for suspension of deportation.

464 U.S. at 196, 104 S.Ct. at 593. The majority further remarked that the courts do justice to Congress's comprehensive scheme for admitting aliens into this country "only by applying the 'plain meaning of Section 244(a), however severe the consequences.'" 464 U.S. 192, 104 S.Ct. at 590.

Under this stringent interpretation of a threshold requirement for Section 244 discretionary relief, we are constrained to reject the petitioners' contentions that deportation under the circumstances is contrary to the law applicable at the time of concession of deportability, as well as is unjust and an absurd application of the statutory requirement.[1]

---

**1.** Justice Brennan, joined by Justices Marshall and Stevens, concurred in the *Phinpathya* judgment but filed a separate opinion. He objected to the majority's literal reading of the continuous physical presence requirement, suggesting that it may lead to "absurd consequences" such as the ineligibility of an alien who returns to his native country to tend to an ailing parent. These results, he noted, must be avoided by looking to congressional intent and then creating exceptions consistent with that intent. 464 U.S. at ——, 104 S.Ct. at 593–94 (Brennan, J., concurring in judgment). Justice Brennan disputed the majority's view that the legislative

history of Section 244 supports a literal reading of the term "continuous," arguing that it instead supports a flexible interpretation. He concluded that the Service should therefore remain free to apply the requirement flexibly. 464 U.S. at 198–205, 104 S.Ct. at 594–97 (Brennan, J., concurring in judgment).

The facts in *Phinpathya* involved a much more prolonged interruption of the aliens' continuous physical presence in the United States. The Court was not actually faced with a situation such as the present, where the aliens are parents of four United States citizen children

## III.

The Sanchez petitioners advance two further contentions, neither of which have merit:

### A.

█ After an initial rule to show cause for deportation was issued, further proceedings were halted in the present case as a result of a district court injunctive order issued in a class action in Illinois prohibiting deportation proceedings affecting certain categories of Mexican aliens. When the appellate court subsequently dissolved the district court's injunction, the Service moved to resume the deportation proceedings against the present petitioners.

Because the minute entries and the ruling below show that the initial proceedings were "terminated" by reason of the injunction, the Sanchezes argue that the initial rule to show cause was in effect voided and that a new rule to show cause was necessary in order for the board to obtain jurisdiction to deport them. However, the record and context regulations show that the term "terminated" as used in instances such as the present had the meaning of suspending proceedings, not dismissing them. *See also* 8 C.F.R. § 242.7, setting forth grounds for cancellation or dismissal of a rule to show cause for deportation.

### B.

█ The petitioners Sanchez also argued that they were denied due process of law because they did not receive a hearing on their Section 244 application for suspension of deportation.

After the stipulation of October 19, 1983 —at which time both the Service and the petitioners expected a hearing and favorable recommendation on their application —, the Supreme Court on January 10, 1984 decided *Phinpathya, supra.* Based on that decision, the Immigration Judge decided, ex parte and without prior notice to the Sanchezes, that the applications for section 244 relief on their face showed a failure to meet the threshold requirement of seven years continuous presence in the United States because of the overnight stay in Mexico in July, 1979.

In view of the interruption of continuous physical presence in the United States resulting from that overnight stay—to which the petitioners had stipulated—, even had a hearing been held, the Immigration Judge and the Board under *Phinpathya* had no alternative but to deny the relief sought by the Sanchez's application. Absent statute or regulation requiring a hearing, we see no reason why, and are cited to no authority supporting that, due process is offended if no hearing is granted on an application that on its face must be denied as a matter of law. Nor can we ascertain any prejudice so resulting to the Sanchezes from a failure under these circumstances to hold a hearing on their applications for Section 244 relief.

█ In support of an argument that the Act itself requires a hearing, the petitioners refer to § 242(b)(3) of the Act, 8 U.S.C. § 1252(b)(3), and the regulations in 8 C.F.R. § 242. These provisions, however, refer to the procedure to be used when determining deportability, not when determining whether an alien who admits deportability is eligible for suspension of deportation or voluntary departure. Neither section 244 of the Act nor the regulations promulgated thereunder, 8 C.F.R. § 244, explicitly require a hearing on the issue of statutory eligibility for suspension of deportation. This is in contrast to the specific procedures set forth in § 242(b)(3) of the Act, 8 U.S.C. § 1252(b)(3), cited by the petitioners. *Cf., Jay v. Boyd,* 351 U.S. 345, 352–53, 76 S.Ct. 919, 924, 100 L.Ed. 1242 (1956).

We are unable to agree that the Act or the regulations require a hearing on a Sec-

---

and have spent all but less than one day of the last twelve years living in the United States, and who have been productive, taxpaying residents with a strong commitment to this country. Nevertheless, we as an intermediate court are bound by the literal ruling of the Supreme Court majority; and if we have misconstrued the purport of the majority opinion, we are sure that the Court will grant relief to the petitioners.

tion 244 application for relief that on its face shows it must be denied as a matter of law.

### CONCLUSION

For the foregoing reasons, the order of the Board is AFFIRMED.

AFFIRMED.