813 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Faosat DAWODU, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 85-2313.
 United States Court of Appeals, Fourth Circuit.
 Argued June 4, 1986.
Decided Oct. 3, 1986.
 
 Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge
 Linda Haspel, Legal Aid Bureau, Inc. (Carol Wolchok, Political Asylum Project of the American Civil Liberties Union Fund of the National Capital Area, on brief), for petitioner.
 Rebecca Thompson, Office of Immigration Litigation, Civil Division, United States Department of Justice (Richard K. Willard, Assistant Attorney General; Thomas W. Hussey, Assistant Director, on brief), for respondent.
 PER CURIAM:
 
 
 1
 Faosat Dawodu appeals the denial of her application for suspension of deportation. We find no merit to her arguments, and we affirm.
 
 I.
 
 2
 Mrs. Dawodu, who is Nigerian, entered the United States in 1970 as the spouse of a non-immigrant student. She was authorized to remain in this country as long as her husband maintained his non-immigrant student status. She and her husband have had two children since they arrived, a son born in 1971 and a daughter born in 1974. Both children are United States citizens.
 
 
 3
 In 1979, after nine years' continued residence in the United States, Mrs. Dawodu took her children back to Nigeria to visit her ill mother-in-law. The trip lasted sixteen days.
 
 
 4
 In April 1980 Mrs. Dawodu's husband terminated his non-immigrant student status and returned to Nigeria. Mrs. Dawodu, who had separated from him earlier in 1980, remained in this country with the two children. The INS eventually learned that she had overstayed, and it issued an order to show cause why she should not be deported. After a hearing, the Immigration judge ruled that she was statutorily ineligible for suspension of deportation because her 1979 visit to Nigeria interrupted the seven year period of continuous physical presence in the United States that must immediately precede an application for suspension. The Board of Immigration Appeals affirmed.
 
 II.
 
 5
 Section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1254(a)(1), provides that the Attorney General may, in his discretion, suspend the deportation of an alien who "has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date" of his application; who "proves that during all of such period he was and is a person of good moral character"; and whose deportation "would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." Mrs. Dawodu's primary argument on appeal is that she should be eligible for suspension because she was continuously present in the United States for seven years before her absence in 1979.
 
 
 6
 In finding Mrs. Dawodu ineligible for suspension, the Immigration judge relied principally on INS v. Phinpathya, 464 U.S. 183 (1984). In Phinpathya the Court clearly indicated that the requirements of Sec. 244(a)(1) are to be strictly applied. It held that the continuous physical presence requirement is a strict threshold requirement that must be met before the Attorney General may exercise his discretion to suspend deportation proceedings. To construe the Act to broaden the Attorney General's discretion, stated the Court, "is fundamentally inconsistent" with Congress' intent and would impermissibly shift authority to relax the continuous physical presence requirement from Congress to the INS and eventually to the courts. Id. at 195. The Court concluded that "Congress meant what it said: otherwise deportable aliens must show that they have been physically present in the United States for a continuous period of seven years before they are eligible for suspension of deportation." Id. at 196.
 
 
 7
 We hold that Phinpathya controls the result in this case. Although the Court did not specifically address the effect of seven years' continuous presence prior to an absence, it did rather emphatically indicate that the statute must be applied literally and strictly. Mrs. Dawodu has not directed us to any post-Phinpathya cases supporting her position;[1] indeed, recent cases have tended to read Phinpathya as requiring strict application of the continuous physical presence requirement. See, e.g., Moreno-Alaniz v. INS, 781 F.2d 1054 (5th Cir.1986); Sanchez-Dominguez v. INS, 780 F.2d 1203 (5th Cir.1986); Moreno v. INS, 779 F.2d 1086 (5th Cir.1986);[2] Alvarez-Ruiz v. INS, 749 F.2d 1314 (9th Cir.1984); Dasigan v. INS, 743 F.2d 628 (9th Cir.1984). We are not persuaded that the factual distinctions Mrs. Dawodu has identified between her situation and these cases suffice to overcome a strict reading of the statutory language. Nor do we believe that the circumstances of her absence are sufficiently compelling for us to attempt to fashion an exception to the statutory language along the lines suggested by Justice Brennan in his concurrence in Phinpathya. 464 U.S. at 196-97 (Brennan, J., concurring in judgment).
 
 III.
 
 8
 We find no merit to Mrs. Dawodu's remaining contentions on appeal, and we affirm the ruling below.
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 In Marti-Xiques v. INS, 741 F.2d 350, 352 (11th Cir.1984), the court seemed to express some doubt as to whether the Phinpathya holding might be broad enough to deny discretionary relief to an alien who leaves the United States for any reason, for any length of time. It did not have to find the opinion that broad to deny relief to the petitioner, who left the country to smuggle aliens back across the borders. The court held that such an absence had a meaningful bearing on the attachment the petitioner had formed to this country
 
 
 [2]
 In Moreno, the petitioner remained in the country for nine years before returning to Mexico on three occasions during the following seven years. The court rejected the doubt expressed in Marti-Xiques as to the breadth of Phinpathya, see supra note 1, and it read Phinpathya to require that every trip outside the United States breaks the continuous physical presence requirement. It went on to note that Moreno's absences were not inadvertent or involuntary and did not arise out of emergencies, id. at 1088, but presumably the nature of the absences was not a factor in the decision