Rosa Carmen CARNEJO–MOLINA,
Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 80–1485.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 8, 1981.

Peter D. Williamson, Houston, Tex., for petitioner.

James P. Morris, Lauri Steven Filppu, James A. Hunolt, Govt. Reg. & Labor Sect., Dept. of Justice, Washington D. C., for respondent.

Before SKELTON *, Senior Judge, and RUBIN and REAVLEY, Circuit Judges.

SKELTON, Senior Judge:

This case involves a deportation proceeding by the United States Immigration and Naturalization Service (INS) against Rosa Carmen Carnejo-Molina (Petitioner), who is a 43-year old native and citizen of Chile. She entered the United States on October 6, 1976, by representing herself to be a citizen

---

* Senior Judge of the United States Court of Claims, sitting by designation.

of the United States and by presenting a passport showing this to be true. After a full investigation, the INS charged her by an order to show cause with having entered the United States without having been inspected and admitted as an alien in violation of § 241(a)(2) (8 U.S.C. § 1251(a)(2)) of the Immigration and Nationality Act (the Act). At the deportation hearing before an immigration judge, with benefit of counsel, she testified and admitted all of the allegations of the Order to Show Cause and conceded deportability under § 241(a)(2) of the Act (8 U.S.C. § 1251 (a)(2)) as an alien who had entered the United States without inspection. However, she applied for a waiver of deportability under § 241(f) of the Act, which was denied by the judge on the ground that she was not otherwise admissable as an immigrant at the time of her entry. She also applied for voluntary departure which the judge denied in the exercise of his discretion after considering all of the evidence. The judge found that her two United States citizen children mentioned below were not equities sufficient to overcome the adverse factors. Other equities presented by petitioner were likewise held to be insufficient to warrant granting her voluntary departure.

At the end of the hearing, the judge ordered her deported. She appealed his ruling to the Board of Immigration Appeals (the Board), which affirmed the decision of the immigration judge. This appeal followed.

The petitioner contends that she did not get a fair hearing because the judge received into evidence and considered her passport, birth certificate, social security and voter registration cards and baptismal certificate, which she says were illegally seized in her residence by the INS officer without a search warrant to search her house or an arrest warrant for her arrest, all in violation of her constitutional rights under the Fourth Amendment. She contends that these documents should have been excluded from the evidence pursuant

to her attorney's objection to them because they were seized by the officer while he was in her house illegally. She also argues that they should have been excluded for the further reason that they were seized by the officer in connection with her arrest in her residence without a warrant. The facts relative to petitioner's arrest and the seizure of the above documents were substantially as follows.

The INS officer obtained a warrant for the arrest of one Louis Acevedo, for reasons not shown by the evidence, and on September 6, 1977, he and another officer entered a house owned by Acevedo, but in which he did not reside, to execute the warrant. Acevedo was in the house and was arrested pursuant to the warrant. The petitioner was also in the house at the time. She resided there. On that occasion the INS officer began to question petitioner. He asked her if she was a United States citizen and she said she was. He then asked her if she had any documents, whereupon she produced the above-mentioned documents and gave them to the officer for inspection.[1] No search of petitioner's residence was made by the officer. The petitioner was requested by the officer to accompany him to the passport office and she did so. We assume, at least *arguendo*, that she was under arrest at the time, as she claims, although the officer denied it. We doubt if she could have successfully refused to accompany him. While at the office, in response to further questions, and on advice of counsel, she admitted that she was a citizen of Chile and was born there. When she made this admission, she was given the *Miranda* warning for the first time. Thereafter, she made a full confession in which she admitted that her birth certificate, passport, social security and voter registration cards, and baptismal certificate showing her birth in the United States and stating that she was a citizen of this country were false. She also confessed that she had used the false passport to enter the United States from Chile on October 6, 1976, claim-

ing to be a United States citizen. When she made these admissions she was formally placed under arrest and released without bond. The documents were kept by the officer. Thereafter, deportation proceedings were filed against her on September 7, 1977, by the issuance of a show cause order, charging her with entering the United States on October 6, 1976, without having been inspected and admitted as an alien as required by § 241(a)(2) (8 U.S.C. § 1251(a)(2)) of the Immigration and Nationality Act (the Act).

The case was scheduled to be heard on September 21, 1977. On that day the petitioner and her attorney appeared before the immigration judge and asked for more time on the ground that the attorney had not had time to prepare the case for trial. The judge continued the case until October 13, 1977, on which date the hearing was held.

The petitioner testified in her own behalf on the advice and with the benefit of counsel. Her testimony showed among other things, the following facts. She was born in Chile and was a citizen of that country and not of the United States. She entered the United States in 1969 using a birth certificate of another person named Rita Cardenas which was given to her by a friend in Mexico. In 1974 she went before a notary public in Texas and with his help filed an application for a delayed birth certificate in which she falsely stated she was born in Livingston, Texas, and was a citizen of the United States. Having obtained the birth certificate, she applied for and received a passport from the United States on October 15, 1974, that showed that she was born in "Texas, U.S.A." on December 19, 1936. She went to Mexico in 1975 and returned to the United States using this passport. On September 6, 1976, she went to Chile and returned to the United States on October 6, 1976, using this passport. Her testimony also showed that she had never been married, but gave birth to two children in the United States and one in

---

1. Before going to petitioner's residence, the officer had information that she was an alien and that she would probably be in the house owned by Acevedo. He did not have a search warrant nor a warrant for her arrest.

Chile, all of whom were living with her in Houston, Texas.[2] She admitted that she had been employed illegally in the United States, had voted in one United States election and had participated in the social security program without being a citizen. She had never reported her address as an alien.

At the beginning of the hearing the judge asked petitioner's counsel if he admitted or denied the allegations in the show cause order. The attorney answered "we would admit allegations one through five in the Order to Show Cause." Those allegations were as follows:

> UPON inquiry conducted by the Immigration and Naturalization Service, it is alleged that:
>
> 1. You are not a citizen or national of the United States;
> 2. You are a native of CHILE and a citizen of CHILE ;
> 3. You entered the United States at MI-AMI, FLA. on or about Oct. 6, 1976
> 4. You were then admitted upon your false statement to the United States Immigration Officer that you were a citizen of the United States.
> 5. You were not then inspected and admitted as an alien by an immigration officer.

Whereupon, the judge inquired of counsel whether he admitted that petitioner was deportable and he answered that on the basis of the admissions of facts and allegations she was deportable. However, the attorney asked that she be given discretionary relief by allowing her voluntary departure for Chile at her own expense within 30 days.

During the trial the government offered the above documents as evidence against petitioner. As stated above, her attorney objected to their introduction on the ground that they had been seized by the officer while he was in her house illegally in violation of her Fourth Amendment rights. Whereupon, the trial judge questioned petitioner about each of the documents separately, one by one, and she admitted that they were the documents she had given the officer while he was in her house and that each of the documents contained a false statement that she was born in Texas and that she was a citizen of the United States when she was actually born in Chile and was a citizen of that country. She testified further that she used the false passport to enter the United States on returning from Chile on October 6, 1976, and on that occasion represented herself to be a citizen of the United States when she knew she was a citizen of Chile. Upon receiving these admissions and these facts, the trial judge admitted the documents into evidence. The petitioner argues that the judge erred in doing so. We do not agree. The action of the judge was proper under the circumstances.

 The entry of the INS officer in petitioner's house to serve the arrest warrant on Acevedo without having a search warrant or an arrest warrant for the arrest of petitioner was illegal in that it violated her constitutional rights under the Fourth Amendment. *See Steagald v. United States*, —— U.S. ——, 101 S.Ct. 1642, 68 L.Ed.2d 38, decided by the Supreme Court April 20, 1981. In that case police officers entered Steagald's house armed with an arrest warrant for one Ricky Lyons. They did not have a search warrant for the search of Steagald's house, nor an arrest warrant for him. They did not find Lyons in the house, but while they were there they searched the house and found a quantity of cocaine. Steagald was thereafter prosecuted for the possession of this drug. He moved to suppress the drug evidence at the trial on the ground that the search and seizure violated his Fourth Amendment rights. The motion was denied. The Supreme Court held that this was error, saying:

> The question before us is a narrow one. The search at issue here took place in the absence of consent or exigent circum-

---

**2.** The child born in Chile was 15 years of age and one of the two born in the United States was 7 years old and the other was born July 6, 1977.

stances. Except in such special situations, we have consistently held that the entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. See *Payton v. New York,* 445 U.S. 573 [100 S.Ct. 1371, 63 L.Ed.2d 639] (1980); *Johnson v. United States,* 333 U.S. 10, 13–15 [68 S.Ct. 367, 368–369, 92 L.Ed. 436] (1948). Thus, as we recently observed, "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York, supra,* [445 U. S.] at 590 [100 S.Ct. at 1382]. *See Coolidge v. New Hampshire,* 403 U.S. 443, 474–475, 477–478 [91 S.Ct. 2022, 2042, 2043–2044, 29 L.Ed.2d 564] (1971); *Jones v. United States,* 357 U.S. 493, 497–498 [78 S.Ct. 1253, 1256, 2 L.Ed.2d 1514] (1958); *Agnello v. United States,* 269 U.S. 20, 32–33 [46 S.Ct. 4, 6, 70 L.Ed. 145] (1925).

\* \* \* \* \* \*

Since warrantless searches of a home are impermissible absent consent or exigent circumstances, we conclude that the instant search violated the Fourth Amendment. —— U.S. at ——–——, 101 S.Ct. at 1646–1650.

Like in *Steagald,* there was no consent nor exigent circumstances in the instant case. However, the cases are distinguishable on the facts. Furthermore, although the officer's entry into petitioner's house violated her Fourth Amendment rights, it does not necessarily follow that everything he did there was a Fourth Amendment violation. However, even if we assume that all of the actions of the officer violated petitioner's Fourth Amendment rights, thereafter, she made a full confession on the advice of counsel at the passport office, and five weeks later she appeared at the deportation

hearing, represented by counsel, and conceded deportability and again admitted the falsity of the documents, identifying them one by one and testifying freely about them and how she used them to enter the United States illegally. Under these circumstances, we hold that any Fourth Amendment violation by the officer in entering petitioner's home and his actions connected therewith had become so attenuated by the time the petitioner testified at the hearing that they did not render the documents nor petitioner's confession inadmissible when they were offered in evidence at the trial. Also, even if there was any taint caused by the officer's actions, the five weeks lapse of time prior to the hearing, the intervening conferences of petitioner with counsel and his advice to her, and the voluntariness of petitioner in confessing her wrongful acts, and in making concessions and admissions in her testimony at the hearing, purged any taint that may have attached to the documents or to the actions of the officer. Consequently, the documents were properly admitted into evidence.[3]

The petitioner also contends that the trial judge erred in denying her application for a waiver of deportability under § 241(f) of the Act, which provides in pertinent part as follows:

The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence.

75 Stat. 655, 8 U.S.C. § 1251(f) [8 USCS § 1251(f)].

---

**3.** This decision makes it unnecessary for us to consider whether the exclusionary rule applies in deportation hearings. *See In re Sandoval,* Interim Decision No. 2725, Board of Immigration Appeals (Aug. 20, 1979). Our decision does not, therefore, intimate any opinion on that question.

The INS seeks to deport the petitioner under the provisions of § 241(a)(2), which provides in pertinent part:

Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—

(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;

(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any law of the United States%y(4)

The Supreme Court held in *Reid v. Immigration & Naturalization Service*, 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975), that the waiver provision of Section 241(f) is inapplicable to deportation under § 241(a)(2), saying:

Section 241(a)(2) establishes as a separate ground for deportation, quite independently of whether the alien was excludable at the time of his arrival, the failure of an alien to present himself for inspection at the time he made his entry. If this ground is established by the admitted facts, nothing in the waiver provision of § 241(f), which by its terms grants relief against deportation of aliens "on the ground that they were excludable at the time of entry," has any bearing on the case.

420 U.S. at 623, 95 S.Ct. at 1167, 43 L.Ed.2d at 507.

The Board affirmed the decision of the trial judge on this issue, citing the *Reid* case and holding:

The respondent [petitioner] admitted at the deportation hearing that she had been admitted into the United States upon her false claim to citizenship. We agree with the immigration judge that this claim was knowingly made. By posing as a United States citizen, she evaded inspection as an alien, and thus entered without inspection. *Reid v. INS*, 420 U.S. 619 [95 S.Ct. 1164, 43 L.Ed.2d 501] (1975). An entry under such circumstances, where

the charge of deportability is based on section 241(a)(2) of the Act, cannot be waived by section 241(f) of the Act. *Reid*, id.

The petitioner conceded that she was deportable under Section 241(a)(2) of the Act. Therefore, Section 241(f) is not applicable. The decision of the Board was correct.

The petitioner has raised an additional issue in her reply brief filed herein. In this issue she contends that she was entitled to suspension of deportation under Section 244(a)(1) of the Act (8 U.S.C. § 1254(a)(1)) which provides as follows:

(a) Adjustment of status for permanent residents; contents. As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; had been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence; * * * .

■ The petitioner did not present this issue to the Board and, consequently, the Board had no opportunity to consider nor to decide it. It is well settled that courts of appeals are not required to consider issues raised by an appellant which were not presented to nor considered by an administrative board as a part of the appellate process. As the Court of Claims pointed out in *Doyle v. United States* and *Adams v. United States*, (Nos. 131–77 and 275–77,

consolidated opinion decided May 16, 1979), 599 F.2d 984 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980):

> It has long been part of our law that a party cannot raise an issue on appeal to a court when [he] failed to raise it before an administrative agency competent to hear it. See *Haynes v. United States,* 190 Ct.Cl. 9, 418 F.2d 1380 (1969). 599 F.2d at 1000.

*See also Wilmot v. United States,* 205 Ct.Cl. 666 (1974); *Grover v. United States,* 200 Ct.Cl. 337 (1973), and cases cited therein. Accordingly, we decline to consider this new issue raised for the first time in petitioner's appeal.

█ The only question remaining to be decided is the voluntary departure issue. The petitioner contends that the judge abused his discretion in denying her application for voluntary departure under Section 244(e) of the Act (8 U.S.C. § 1254(e)), which provides in pertinent part:

> The Attorney General may, in his discretion, permit any alien under deportation proceedings ... to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure....

It is clear from this provision that the decision whether to permit voluntary departure rests within the discretion of the Attorney General or his delegate. *Kimm v. Rosenberg,* 363 U.S. 405, 408, 80 S.Ct. 1139, 1141, 4 L.Ed.2d 1299 (1960); and 8 C.F.R. 244.1, §§ 244.2. Our review is limited to whether discretion was actually exercised and whether it was exercised in an arbitrary or capricious manner. *Cuevas-Ortega v. INS,* 588 F.2d 1274, 1278 (9 Cir. 1979); and *Aalund v. Marshall,* 461 F.2d 710, 714 (5 Cir. 1972). The Board considered and disposed of this issue in a thorough and comprehensive discussion and decision as follows:

> This leaves the question of the exercise of discretion. The immigration judge found that such an exercise of discretion was not warranted because of the respondent's activities in circumventing the immigration laws, and because she had been employed illegally, and had never reported her address as an alien. He also found that the respondent's conduct at the hearing indicated that she would not in fact leave the United States if granted voluntary departure. He further found that her two United States citizen children were not equities sufficient to overcome the adverse factors.
>
> The respondent contends that she has other equities that were not considered by the immigration judge. Among these are the fact that she has no convictions for immigration law violations, that she expressed her intention to depart voluntarily at her own expense, and that she has no history of welfare, or of criminal activity. The respondent also claims that the immigration judge was prejudiced against her because she had three children born out of wedlock. This last claim we do not consider substantiated, as the inquiry into the respondent's personal life was apparently motivated by the possibility that she was ineligible for voluntary departure on the grounds of adultery.
>
> It would appear, therefore, that all of the relevant factors have been raised by both the respondent and the immigration judge. In balancing the adverse against the favorable, we have concluded that voluntary departure is not warranted. The respondent entered through fraud on several occasions, and her obtention of a fraudulent passport shows a conscious and serious intent to evade the immigration laws. In addition, her testimony at the hearing was evasive and reflected poorly on her veracity. Given these strongly adverse factors, it was proper to require the respondent to present equities of a substantial nature. We do not find the fact that she has two citizen children to be such a equity. The appeal will accordingly be dismissed.

█ We approve the decision of the Board on this issue. We conclude that the

judge exercised discretion in a manner that was neither arbitrary nor capricious, and that his decision and that of the Board were supported by substantial evidence.

After a careful review of the record, the briefs and argument of counsel, we hold that the decision of the immigration judge ordering the deportation of the petitioner to Chile should be and it is hereby affirmed.

AFFIRMED.