**Manuel Rodriguez SANCHEZ,
Petitioner,**

v.

**UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

**No. 84–4588
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 25, 1985.

Michael Jacobsen, Houston, Tex., for petitioner.

Robert L. Bombough, Director, Office of Immigration Litigation, Civ., Div., Richard M. Evans, Madelyn E. Johnson, Allen W. Hausman, Attys., Civ. Div., Washington, D.C., for I.N.S.

David H. Lambert, Dist. Dir., INS, New Orleans, La., Gary L. Goldman, Chief Legal Officer, INS, Houston, Tex., for other interested parties.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This is an appeal from an order of the Board of Immigration Appeals directing the petitioner to return to Mexico. Because we find no abuse of discretion in the decision below, we affirm the Board's order.

I.

The petitioner, Manuel Rodriguez Sanchez, is forty-eight years old and a native and citizen of Mexico. He entered the United States as a visitor on May 22, 1970. Although admitted for a maximum of seventy-two hours, he has remained in the United States up to the present, a period of over fourteen years.

Sanchez claims that he was forced to come to the United States because he could not find work in Mexico, and was supporting himself, his parents, including his invalid father, his wife and his six children. After working at painting homes and cars in Mexico, and being laid off in 1970, Sanchez was unable to find jobs in either Monterrey or Guadalajara, and so decided to come to the United States. Sanchez estimated that in Mexico in an average week he would earn about $45 as a painter, where in the United States he now earns about $300 a week. His son is presently attending the University of Monterrey, and Sanchez owns a completely paid-for home in Mexico, bought during the period he worked in the United States without authorization. His wife is not working and none of his six children had ever worked as of the time of the deportation hearing, although the children were then aged twenty-four, twenty-two, twenty, eighteen, sixteen and thirteen, the older ones had "completed through the twelfth grade" of school, and apparently only one child was enrolled in a post-high school educational program. He and all of his family, with the sole exception of his disabled father, aged seventy, are not alleged to be in other than good health. Sanchez also claims that if he now returned to Mexico he would suffer extreme hardship due to an inability to find work and his separation from this country. He states that his relatives made inquiries about job possibilities, but told him there were no jobs for house or automobile painters available now. Sanchez's

only brother is currently working in Mexico.

The record indicates that Sanchez's parents, wife, all three of his siblings, and all six children are natives and citizens of Mexico. Sanchez claims to have no blood relatives residing in the United States.

Sanchez does not own a home in the United States. Since 1978 or 1979, he has belonged to the "Iglesia Evangelica Lutherana at Northside." He has worked continuously for the same employer, a painting contractor, since 1971. He testified that his employer has been trying to get him a labor certification for a sixth-preference visa, but that the employer would be unable to help him return to the United States if he were deported, implying that this constituted an additional hardship factor.

After a hearing at which the petitioner gave testimony, the immigration judge found that Sanchez had not established a deportation resulting in "extreme hardship" to himself.[1] The judge stated that the case showed no outstanding problem of any kind. He commented that the hardships that Sanchez had demonstrated were certainly not exceptional. The judge also noted that the effect of returning to a lower standard of living and difficulty in finding employment do not in themselves constitute extreme hardship. The immigration judge found against Sanchez and ordered him to return to Mexico. This decision was appealed by Sanchez to the Board of Immigration Appeals.

The Board dismissed Sanchez's appeal on August 10, 1984, finding the facts underlying the immigration judge's conclusion to be so clear as to "require no further comment." "Notwithstanding ... [petitioner's] lengthy stay in the United States," the Board found that he had not articulated factors rising to the level of extreme hardship. Sanchez now appeals this decision of the Board of Immigration Appeals.

## II.

■■ Because the proceedings below did not utterly fail to give consideration to the factors pertinent to a determination of "extreme hardship," we affirm the Board's order requiring Manuel Rodriguez Sanchez to leave this country.

The standard of review that this court may exercise over a decision by the Board of Immigration Appeals such as the one at issue here is of a most limited kind, we may reverse the Board only if its decision is "arbitrary, irrational or contrary to law." *Contreras-Buenfil v. I.N.S.*, 712 F.2d 401 (9th Cir.1983); *Santana-Figueroa v. I.N.S.*, 644 F.2d 1354 (9th Cir.1981).

> [A]lthough we may find an abuse of discretion in the Board's utter failure or refusal to consider relevant hardship factors, we ... lack the authority to determine the weight, if any, to be afforded each factor. Similarly, we may not assess the credibility of the witnesses or evidence that purports to prove the existence of each factor.

*Zamora-Garcia v. United States Department of Justice Immigration and Naturalization Service*, 737 F.2d 488, 493 (5th Cir.1983).

■■ Thus, our review is limited to ascertaining whether *any* consideration has been given by the Board to a limited range of factors,[2] nor are we free to undermine the discretion of the Board by parsing these factors into ever smaller subfactors and requiring the Board to consider the pieces. Congress has given the Attorney General, not the courts, the primary task of interpreting the statute here at issue: "The Attorney General and his delegates have the authority to construe 'extreme hardship' narrowly should they deem it wise to

---

**1.** 8 U.S.C. § 1254(a) gives to the Attorney General discretion to suspend deportation of aliens showing, among other things,. "extreme hardship to the alien or to his spouse, parent, or child who is a citizen of the United States...."

**2.** These factors include: (a) length of residence in the United States; (b) community ties in the United States; (c) possibility of obtaining a visa; (d) the financial burden of an alien having to go abroad to obtain a visa; and (e) health and age of the alien. *Urbano de Malavan v. I.N.S.*, 577 F.2d 589 (9th Cir.1978).

do so." *Immigration and Naturalization Service v. Jong Ha Wang*, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981). "These words [extreme hardship] are not self-explanatory, and reasonable men could easily differ as to their construction. But the Act commits their definition in the first instance to the Attorney General and his delegates ...." *Id.* at 144, 101 S.Ct. at 1031. *Jong Ha Wang* expressly disapproved of the Ninth Circuit's interpretation of "extreme hardship" as "hardship ... different from and more severe than that suffered by the ordinary alien who is deported." *Id.* at 145, 101 S.Ct. at 1031 (quoting in part 622 F.2d 1341, 1346 (9th Cir.1980)). It is clear from *Jong Ha Wang* that the Attorney General and his delegates are empowered to interpret "extreme hardship" as meaning *at least* hardship substantially different from and more severe than that suffered by the ordinary alien who is deported. Accordingly, the hardship factors which the Board must consider need be no more refined than is necessary to meet such a narrow construction of the statutory language. Our previous holdings also indicate that the hardship factors must be considered cumulatively, as well as in isolation. *Ramos v. I.N.S.*, 695 F.2d 181, 186 n. 12 (5th Cir.1983). As discussed below, the Board has met the procedural requirements in this case.

### III.

■ Sanchez asserts that the Board did not adequately consider his age, his long residence in and personal community ties to the United States, the economic impact on himself and his family, and the financial burden in obtaining a visa abroad and labor certification. As we noted above, it is necessary only that the Board give some actual consideration to the relevant hardship factors; this court is without authority to determine how much weight must be given to a factor once it has been considered. The record in this case clearly indicates that the Board was aware of Sanchez's age and length of residence as well as his community ties; the judge's decision included Sanchez's age and the fact that he entered the United States in 1970. The Board expressly mentioned his "lengthy stay" in its decision. Sanchez argues that the Board's failure to address expressly his community ties, such as his church membership, constitutes an abuse of discretion. The proceedings below do not expressly mention "community ties" as such; however, the immigration judge's opinion does mention that Sanchez had "become accustomed to the American way of life" and that Sanchez's "[a]ttainment of a statutory minimum residence does not necessarily mean that suspension will be granted.... Nor is there any outstanding problem of any kind [in this case]." These general statements by the immigration judge are sufficient to indicate that he actually considered the degree of community integration Sanchez had obtained; as discussed above, we are not free to parse the "community ties" into subfactors such as "church ties," and force the Board to expressly address these, too. The only "community ties" Sanchez alleges are of a very general nature, such as church membership and the fact that he has come to know some people in this country; the affidavits he produced do not indicate that Sanchez has more than ordinary community ties for a deportable alien. Accordingly, it is not surprising that the immigration judge would respond to such general allegations of community ties with equally general language. Under the circumstances of this case, language here reasonably indicates that the factor was generally considered, and such language is sufficient.

Sanchez also contends that the financial impact on him and his family was not considered; the record clearly indicates that this is untrue. The immigration judge expressly considered the economic impact of his decision; his opinion discussed Sanchez's father's dependency, the dependency of his wife and children, and the fact that Sanchez owned real ·estate and had some savings. Moreover, the judge expressly addressed Sanchez's employment prospects which were found to be better in the United States than in Mexico. "[Sanchez] ... is able to earn more in one day in the

**1162**

United States than he was able to earn in one week ... in Mexico." Obviously, some consideration was given to the economic impact here on both Sanchez and his family.

Finally, Sanchez disputes the immigration judge's determination that Sanchez's ability to obtain a visa and labor certification abroad was of little import. The judge stated he believed Sanchez's arguments in this area were wasting "a lot of time on something that is trivial in input." The judge's comment is sufficient to indicate he considered the issue and decided it was trivial. Aside from the issue of labor certification, Sanchez does not contend he will experience any other visa-related problems. We again point out that we are without authority to determine how much weight, if any, should be given a factor which has been actually considered.

Finally, Sanchez argues that the Board and the immigration judge did not consider all of the factors cumulatively. However, there is language in the record that the judge did consider all of Sanchez's arguments and determined that the only nontrivial question was of that of economic impact, which he then determined was insufficient to support a finding of "extreme hardship." This argument is therefore without merit.

## IV.

Because we find that the proceedings below were procedurally adequate, we find no abuse of discretion on the part of the Board in its decision to return Sanchez to Mexico where his wife and children currently reside. Accordingly, the decision of the Board is

AFFIRMED.