Patricio HERNANDEZ–CORDERO and
Maria Guadalupe Ortega de
Hernandez, Petitioners;

v.

UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 85–4587
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 5, 1986.

Barbara Hines, Austin, Tex., for petitioners.

Edwin Meese, III, Atty. Gen., Robert L. Bombaugh, Director, Madelyn E. Johnson, Atty., Allen E. Hausman, Asst. Director, Eloise Rosas, Richard M. Evans, Attys., Office of Immigration Litigation, Washington, D.C., for respondent.

Richard M. Casillas, Dist. Director, I.N.S., San Antonio, Tex., David H. Lambert, Dist. Director, I.N.S., New Orleans, La., for other interested parties.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

## OPINION

ALVIN B. RUBIN, Circuit Judge:

The issue presented by this appeal is whether the Attorney General abused his

discretion in failing to find that the deportation of an alien husband and wife, whose three of their four minor children are citizens of the United States, would occasion them extreme hardship. We find that the Board of Immigration Appeals, in its determination of extreme hardship, failed to consider cumulatively the evidence of hardship, both economic and otherwise, presented by the petitioners. We, therefore, reverse and remand for further consideration.

Patricio Hernandez-Cordero, age 32, and his wife, Maria Guadalupe Ortega de Hernandez, age 35, are natives and citizens of Mexico. They have four children, Victor, age 13, a Mexican citizen, the natural son of Mrs. Hernandez, who has been adopted by Hernandez; Patricio, Jr., age 9; Lisa, age 8; and Veronica, age 7, all of whom are native-born American citizens. Mr. and Mrs. Hernandez were married in 1975 and have resided in the United States continuously since then. In addition, Mrs. Hernandez had lived in the United States previously. Hernandez is subject to deportation because he has never obtained a visa [1] and Mrs. Hernandez can be deported because, although she had obtained a visitor's permit upon entry, she did not depart when it expired.[2]

The Hernandez family resides in a home they built in Georgetown, Texas. Hernandez is self-employed as a trim-carpenter contractor and earns approximately $12,000 a year. Mrs. Hernandez is a housewife. They have assets valued at $70,000, including cash, a motor vehicle, and their home, on which they owe $45,000, payable at the rate of $525 a month.

The Immigration and Naturalization Service has stipulated that both Hernandezes are of good moral character and have been physically present in the United States for more than seven years. The immigration judge found that "this young couple is industrious, law-abiding, and the type that anyone would desire as a next-door neighbor." Nevertheless, he found that their deportation would not occasion them extreme hardship.

The Attorney General, in his discretion, may grant suspension of deportation to an alien and adjust the alien's status to that of a person legally admitted for permanent residence if he finds, pursuant to section 244(a)(1) of the Immigration and Nationality Act,[3] that the alien has (1) been physically present in the United States for a continuous period of at least seven years immediately preceding the application; (2) established his good moral character; and (3) shown that deportation would result in extreme hardship to himself or to a citizen or lawful permanent resident spouse, parent, or child.

The Board of Immigration Appeals, to whom the Attorney General has delegated his authority, has broad discretion to determine what constitutes extreme hardship. Our power of review of its decisions is, as we have repeatedly said, of the most limited kind. We may reverse the Board only if its decision is "arbitrary, irrational or contrary to law," and, therefore, constitutes an abuse of its discretion.[4] The Board's narrow interpretation of what constitutes "extreme hardship" is consistent with the exceptional nature of the relief provided by suspension of deportation.[5]

The burden is on the aliens who seek a suspension of deportation to establish their eligibility.[6] Whether an alien will

1. *See* Immigration and Nationality Act, § 241(a)(1), 8 U.S.C. § 1251(a)(1).

2. *Id.* at 241(a)(2); 8 U.S.C. § 1251(a)(2).

3. 8 U.S.C. § 1254(a)(1).

4. *Sanchez v. INS,* 755 F.2d 1158, 1160 (5th Cir. 1985); *see also Zamora-Garcia v. INS,* 737 F.2d 488, 493 (5th Cir.1984).

5. *INS v. Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123, 130 (1981) (per curiam); *INS v. Phinpathya,* 464 U.S. 183, 194 n. 11, 104 S.Ct. 584, 591–90 n. 11, 78 L.Ed.2d 401, 412 n. 11 (1984).

6. *Gomez-Martinez v. INS,* 593 F.2d 10 (5th Cir.) (per curiam), *cert. denied,* 444 U.S. 941, 100 S.Ct. 295, 62 L.Ed.2d 307 (1979); *Pelaez v. INS,* 513 F.2d 303, 305 (5th Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975).

suffer extreme hardship depends on the specific circumstances in each case. In determining whether deportation would cause an alien to suffer extreme hardship, the board is to consider, among others, the following factors: the alien's age; his family ties in the United States; his health condition; the economic and political condition of the country to which the alien is returnable; the alien's financial status, that is, his business and occupation; the possibility of other means of status adjustment; and, finally, the alien's immigration history.[7] Whether the alien has shown extreme hardship depends upon an evaluation of each of these factors separately, and the effect of their cumulative impact.[8]

Hernandez testified that he worked as a trim carpenter and that he did not believe he would be able to support his family in Mexico. The immigration judge did not consider this to constitute extreme hardship because an alien's inability to find comparable employment upon deportation is only a disadvantage. Though economic hardship is a relevant consideration under the statute, it does not, in and of itself, establish the extreme hardship that would entitle an alien to a suspension of deportation.[9] Such difficulty reflects, in part, the differences in economic conditions between the two countries and, as such, is not dispositive.[10] The life-style adjustment demanded of an alien returning to his native country is not ordinarily sufficient to warrant suspension of deportation.[11]

Even assuming that the immigration judge correctly concluded that Hernandez could find some kind of work in Mexico, it is undisputed that he and his family would suffer a drastic reduction in their standard of living. But, as the Seventh Circuit said, Congress did not intend "the immigration courts to suspend the deportation of all those who will be unable to maintain the standard of living at home which they have managed to achieve in this country."[12] Also, the fact that, if deported, the Hernandezes would be unable to continue the mortgage payments on their home and would be required to sell it at a loss does not alone amount to a showing of extreme hardship.[13]

Turning to the Hernandezes' other claims of extreme hardship, the immigration judge found that leaving their numerous friends and relatives would be difficult, but that it did not amount to extreme hardship. He found that the claims of extreme hardship to the three citizen children also did not establish the showing of "specialized" hardship necessary to meet the statutory requirement.[14] He concluded that the children, who could speak but could not read or write Spanish, should be able to adjust to life in Mexico without "extreme" hardship and that their circumstances would not be "significantly different" from that of other native-born American children returning to their parents' homeland. As a matter of law, the return of citizen children with their parents to a country with a

---

7. *See Sanchez v. INS*, 755 F.2d at 1160 n. 2; *Ramos v. INS*, 695 F.2d 181, 186 (5th Cir.1983) (citing *Bueno-Carrillo v. Landon*, 682 F.2d 143, 146 (7th Cir.1982)).

8. *Ramos v. INS*, 695 F.2d 181, 186 n. 12 (5th Cir.1983); *see also Sanchez v. INS*, 755 F.2d at 1162.

9. *See, e.g., Zamora-Garcia v. U.S. Dept. of Justice INS*, 737 F.2d 488, 491 (5th Cir.1984); *Chang v. Jiugni*, 669 F.2d 275, 279 (5th Cir.1982); *Villena v. INS*, 622 F.2d 1352, 1358 (9th Cir.1980); *Santana-Figueroa v. INS*, 644 F.2d 1354, 1356 (9th Cir.1981).

10. *Bueno-Carrillo v. Landon*, 682 F.2d 143, 146 (7th Cir.1982); *Carnalla-Munoz v. INS*, 627 F.2d 1004, 1006 (9th Cir.1980).

11. *Carnalla-Munoz*, 627 F.2d at 1007.

12. *Bueno-Carrillo v. Landon*, 682 F.2d 143, 146 (7th Cir.1982).

13. *See Chokloikaew v. INS*, 601 F.2d 216, 218 (5th Cir.1979); *Carnalla-Munoz v. INS*, 627 F.2d at 1006–07. *But see Sanchez-Dominguez v. INS*, 780 F.2d 1203, 1204–05 (5th Cir.1986) (alien husband and wife, with four citizen children, who owned own home and other property and was gainfully employed at relatively high wages undeniably met condition of extreme hardship).

14. *Aguilar v. INS*, 638 F.2d 717, 719 (5th Cir.1981).

lower standard of living and diminished educational opportunities does not of itself require a finding of extreme hardship.[15]

The immigration judge assumed that this case did not involve the separation of the Hernandez parents and children. It is not clear from the record that the Hernandez's had unequivocally decided to take their children to Mexico if they were denied their request to suspend deportation. Even if they had, in *Ramos v. INS*,[16] we held that this dilemma created by the possibility of deportation is a hardship factor entitled to meaningful consideration. In *Ramos* we stated that "imposing on grade-school-age citizen children, who have lived their entire lives in the United States, the alternatives of either prolonged separation from both parents or removal to a country of a vastly different culture" is a significant factor to be considered by the INS in its "extreme hardship" determination.[17]

Evidence before the immigration judge included an affidavit by a psychologist that the Hernandez family would suffer severe emotional and psychological consequences if forced to return to Mexico, an affidavit of an economist detailing the severe economic hardship that would face the family upon their return, and affidavits of six teachers that the school-age Hernandez children would suffer serious educational and emotional difficulty if sent back to Mexico.

Approving and endorsing the careful ticking off of the factors by the immigration judge, the Board of Immigration Appeals reached the same conclusions, adding, in perfunctory fashion, that it had "considered all of the factors presented, both individually and cumulatively," and, having done so, agreed with the immigration judge's conclusion.

Although we held in *Ramos v. INS*[18] that there is little room for "substantive" judicial review of adverse determinations of extreme hardship, we may review the "procedural" aspects of these determinations to ensure that the petitioning alien has received full and fair consideration of all circumstances that give rise to his claims. In this case, the mere recitation that all of the factors were considered cumulatively is not sufficient.[19] "The decision of the immigration authorities must affirmatively reflect that they have meaningfully addressed and reached a reasoned conclusion concerning all the factors relevant to [the extreme hardship] determination which are based on evidence."[20] Abstract recognition of this duty without its implementation does not suffice.[21]

█ The Board should have determined whether the cumulative effect of these claims of economic and emotional hardship would be extreme, even if, when considered separately, none of them would be. The Hernandezes face the combined effect of depriving Hernandez of his livelihood, drastically reducing the family's standard of living, disrupting and possibly severely affecting his citizen children's education, and imposing upon the children and the rest of the family possibly severe emotional and psychological consequences.[22] Deportation would uproot a law-abiding and industrious family from a community to which they had belonged and to which they had contributed for nearly a decade.

The judge and the Board apparently considered these matters, since they are mentioned in the psychologist's and teachers' affidavits to be a problem, difficulty, or

---

**15.** *See Ramos v. INS*, 695 F.2d 181, 187 n. 16 (5th Cir.1983); *Davidson v. INS*, 558 F.2d 1361, 1362–63 (9th Cir.1977); *see also Patel v. INS*, 638 F.2d 1199, 1206 (9th Cir.1980).

**16.** 695 F.2d 181, 183–84, 186–87 (5th Cir.1983).

**17.** *Id.* at 186 (and cases cited therein).

**18.** 695 F.2d 181, 184–85 (5th Cir.1983).

**19.** *Ramos v. INS*, 695 F.2d at 186 n. 12, 189–90; *Bueno-Carrillo v. Landon*, 682 F.2d at 146 n. 3.

**20.** *Ramos*, 695 F.2d at 189.

**21.** *Id.*

**22.** *Zamora-Garcia v. U.S. Dept. of Justice INS*, 737 F.2d 488, 494 (5th Cir.1984); *see Santana-Figueroa v. INS*, 644 F.2d 1354, 1357–58 (9th Cir. 1981).

hardship, but found none of them extreme enought to warrant a suspension of deportation.[23]  But just as one more straw may eventually break even the back of a camel, the cumulative effect of these many hardships, each deemed not in itself sufficient, may make their total weight extreme.  The board should at least determine, in a deliberate and reasoned manner, whether the straws of hardship here are the kind the statute exacts or whether they are together so onerous that relief should be granted.

We REVERSE and REMAND, directing the Board to consider and make appropriate findings on the cumulative impact of the various hardships that deportation would inflict on the Hernandez family. Even though no one of them alone constitutes extreme hardship, they might, cumulatively considered, impose such a degree of suffering.

---

**23.**  *Cf. Santana-Figueroa v. INS,* 644 F.2d 1354, 1357 (9th Cir.1981) (when claim for relief specific and supported by evidentiary materials, Board must articulate reasoned basis for denying relief; reviewing court not to affirm on theory that Board necessarily considered whatever petitioner asserted).