**Noris VARGAS, et al., Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 85–4933
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 7, 1987.

---

ing Dist. Director, I.N.S., New Orleans, La., for other interested parties.

Before GEE, RANDALL and DAVIS, Circuit Judges.

## ON PETITION FOR REHEARING

PER CURIAM:

We granted the motion of the Immigration and Naturalization Service to stay consideration of its motion for panel rehearing pending this court's decision in *Hernandez-Cordero v. United States Immigration & Naturalization Serv.,* 819 F.2d 558 (5th Cir.1987) (en banc). We find that *Hernandez-Cordero* controls the disposition of this appeal and leads us to a different result than that reached in the original panel opinion. Rehearing is therefore granted. The prior opinion (unpublished) is withdrawn, and this opinion is substituted in its place.

The petitioners, a husband and wife and their two alien children, appeal from an order of the Board of Immigration Appeals ("BIA") denying them suspension of deportation based upon the conclusion that their deportation would not result in extreme hardship. Under the limited standard of judicial review set out in this court's en banc decision in *Hernandez-Cordero,* we are compelled to affirm.

I.

Adelaido Vargas-Noris and his wife Marin de Noris de Vargas have lived in the United States together since 1972. Vargas entered the country from Mexico in late 1971 and has not returned to Mexico since then, as he is not able to cross the border freely. Vargas' wife joined him in the United States several months later, bringing with her two of the Vargases' children, also petitioners in this appeal, Juan Vargas-Noris and Lilia Vargas-Noris. Since living in the United States, the Vargases have had two more children, both of whom, having been born here, are American citizens.

Samuel M. Tidwell, Dallas, Tex., for petitioners.

Edwin Meese, III, Atty. Gen., Dept. of Justice, Robert L. Bombough, Director, Madelyn E. Johnson, Allen W. Hausman, Alison Drucker, Richard M. Evans, Lauri Steven Filppu, Marshall Tamor Golding, Attys., Office of Immigration Litigation, Civ. Div., Washington, D.C., for respondent.

Ronald C. Chandler, Dist. Director, I.N.S., Dallas, Tex., B.Z. Camplinger, Act-

The Vargases live in Dallas, Texas. Both parents work, and they have filed federal income tax returns since 1976. All of the Vargas children have attended the public schools. Before moving to Dallas in 1984, the Vargas family lived in various small towns in West Texas. Since moving to the United States, the family has accumulated approximately $26,000 worth of cash and assets.

In April, 1984, the Immigration and Naturalization Service ("INS") issued to the four petitioners orders to show cause, charging that all were deportable under § 241(a)(2) of the Immigration and Naturalization Act ("the Act") for entry into the United States without inspection. 8 U.S.C. § 1251(a)(2). Each of the Vargases admitted the truth of the allegations in the orders to show cause, and they conceded their deportability. The Vargases, however, applied for suspension of deportation. The Attorney General, who has delegated this authority to the BIA, may grant such a suspension upon a finding, pursuant to § 244(a)(1) of the Act, 8 U.S.C. § 1254(a)(1), that the aliens have: (1) been physically present in the United States for a continuous period of at least seven years, (2) established good moral character, and (3) shown that deportation would result in extreme hardship (to themselves or to a citizen or to a lawful permanent resident spouse, parent or child).

The INS conceded that the Vargases have been present in the United States for at least seven years and are of good moral character. The INS argued, however, that the Vargases' deportation would not result in extreme hardship.

A hearing was held before an Immigration Judge ("IJ") on October 9, 1984, which was continued to December 19, 1984. The adult Vargases and the two alien children testified at the hearing. Their testimony showed that economic conditions and employment prospects for the Vargases were much worse in Mexico than in the United States and that the children would experience hardships in adjusting to the school system and culture in Mexico.

The IJ, following the hearing, agreed with the INS and ordered the Vargases deported. The IJ concluded that, although the Vargases would suffer hardships by their deportation to Mexico, they would not suffer "severe hardship." Upon review, the BIA dismissed the appeal, affirming the IJ's conclusion that the Vargases had not shown extreme hardship. From this decision of the BIA, the Vargases bring this petition.

In their petition, the Vargases argue that the BIA abused its discretion in failing to grant them suspension of deportation. Specifically, the Vargases argue that (1) the BIA erred in concluding that the possible inability of the adult Vargases to provide food for their family if deported to Mexico did not constitute "extreme hardship"; (2) the BIA erred in concluding that the relocation of the Vargases' four children to Mexico did not constitute extreme hardship; and (3) the BIA erred in ordering that Adelaido Vargas be deported before action could be taken on the fifth preference petition filed by his brother, a United States citizen. After setting out the appropriate standard of review, this opinion will address the Vargases' arguments that the BIA abused its discretion in failing to find that their deportation would result in extreme hardship. After addressing these arguments, this opinion will then address the procedural grounds for reversal relied upon in the prior panel opinion.

II.

This court, in *Hernandez-Cordero*, set out the appropriate standards of substantive and procedural review of a decision of the INS denying suspension of deportation on the basis of a finding of no extreme hardship. Our substantive review under the "abuse of discretion" standard was set out as follows:

[I]n the substantive review of a no "extreme hardship" determination, we are entitled to find that the BIA abused its discretion only in a case where the hardship is uniquely extreme, at or closely approaching the outer limits of the most severe hardship the alien could suffer

and so severe that any reasonable person would necessarily conclude that the hardship is extreme.

*Hernandez-Cordero*, 819 F.2d at 563. As to the standard of review on procedural grounds of a no extreme hardship determination by the INS, we stated:

> Although a court has virtually no substantive review of the BIA's "extreme hardship" finding, we may still scrutinize the BIA's decision for procedural regularity. We recently clarified that this procedural review "is limited to ascertaining whether *any* consideration has been given" by the BIA to the factors establishing "extreme hardship." In *Sanchez* we affirmed the denial of a suspension of deportation because the BIA did not "utterly fail" to give consideration to the factors pertinent to a determination of "extreme hardship." We reasoned that a procedural review that focuses on whether the petitioner's claims of hardship have been adequately considered should be strictly limited because "we ... lack the authority to determine the weight, if any, to be afforded each factor."

*Id.* (quoting *Sanchez v. INS*, 755 F.2d 1158, 1160 (5th Cir.1985)) (citations omitted). As to what the BIA must do to demonstrate that it considered a relevant factor, we stated:

> The BIA will ordinarily satisfy its procedural responsibilities by demonstrating that it has considered all the relevant factors of an "extreme hardship" determination, both individually and collectively. "It has no duty to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted."

*Id.* (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142–43 (5th Cir.1984)) (citations omitted). With this very limited standard of review in mind, we turn to our consideration of the Vargases' petition.

### III.

#### A. Substantive Issues:

The Vargases argue that the BIA erred in concluding that the various hardship factors presented by the Vargases do not constitute extreme hardship. As noted above, the testimony of the Vargases tended to show that deportation would result in economic hardship, in that the adult Vargases might not find employment in Mexico, certainly would not earn the same amount of money as they earn in the United States, and would certainly have a lower standard of living. All of the Vargases' children would have to adjust to life in Mexico, and might well have less in the way of educational opportunities there. Although we have no doubt that the Vargases and their children will suffer hardships if deported, we cannot say, on this record, that the hardships are "uniquely extreme" or "so severe that any reasonable person would necessarily conclude that the hardship is extreme." Instead, we think that the various hardships raised by the evidence before the IJ are similar to those that would be suffered by any alien family that is being deported to Mexico after living in the United States for more than seven years.

The BIA considered the factors raised in the Vargases' petition, both individually and collectively, and determined that such hardships were insufficient to constitute extreme hardship. Under *Hernandez-Cordero*, we are not at liberty to disagree. Although we might have decided this case differently were we the BIA, this court has the power to engage in "virtually no substantive review of the BIA's 'extreme hardship' determination." *Id.* at 563. Hence, we must reject the Vargases' argument that the BIA abused its discretion in concluding that their deportation would result in no extreme hardship.

#### B. Procedural Issues:

In the original panel opinion in this case, we reversed the decision of the BIA because that body had arguably failed to consider the cumulative effect of the hardship factors raised by the Vargases and

failed to consider the possible breakup of the Vargas family as a hardship factor. We think that the en banc decision in *Hernandez-Cordero* requires that the BIA's determination be affirmed.

In determining that the decision of the BIA must be sustained against a challenge of procedural deficiencies, we have looked to both the en banc decision in *Hernandez-Cordero*, and the original panel opinion in that case, reported at 783 F.2d 1266. In the original opinion, a panel of this court reversed and remanded the decision of the BIA not to suspend Hernandez-Cordero's deportation. The ground for reversal was that the BIA had failed to meaningfully consider the cumulative impact of the various hardships alleged by Hernandez-Cordero. *Id.* at 1269–70. In *Hernandez-Cordero*, as in the case *sub judice*, the BIA had stated in a conclusory fashion that all of the factors had been considered cumulatively. The panel opinion in *Hernandez-Cordero* concluded, however, that "the mere recitation that all the factors were considered cumulatively is not sufficient." *Id.* at 1269. This position was rejected by the en banc court on rehearing. The en banc opinion stated as follows:

> The BIA specifically stated that it "had considered all of the factors presented, both individually and cumulatively." Although the panel opinion was critical of the BIA's lack of analysis on the cumulative effect of the Hernandezes' individual claims of hardship, we see little else on this record that the BIA could have said on the subject. Petitioner points to no independent factor created by the synergistic effect of the combination of hardship claims that requires separate consideration and discussion.

819 F.2d at 563. Hence, we read *Hernandez-Cordero* to hold that, absent some showing that the synergistic effect of the combination of hardship claims creates an independent factor requiring separate consideration, the BIA's statement that it considered the cumulative effect of the hardship factors is procedurally sufficient. In the case *sub judice*, the BIA stated that it had considered the hardship factors, both individually and "collectively." [1] As the Vargases have made no showing that the cumulative effect of their hardships creates an independent factor requiring separate consideration, we think that the BIA's statement that it had considered the factors collectively is sufficient under *Hernandez-Cordero* to sustain the BIA's finding of no extreme hardship.

The other ground for reversal in the original opinion in this case was that the BIA had failed to consider the potential breakup of the Vargases' immediate family should the alien parents and children return to Mexico and the citizen children remain in the United States. We noted that although the Vargases, in their brief to the BIA, stated that the citizen children would remain in the United States if the rest of the family were deported, the BIA failed to address this specific possibility. We noted in the opinion that the record in this case, like the record in *Hernandez- Cordero*, did not make clear what the Vargases had decided to do with their American-born children, but held that the BIA erroneously failed to address this issue as a possible ground of extreme hardship.

Once again, we think that the en banc decision in *Hernandez-Cordero* requires a different result. As noted above, the original panel opinion in *Hernandez-Cordero* noted that, although it was "not clear from the record that the Hernandez's had unequivocally decided to take their children to Mexico if they were denied their request to suspend deportation," this factor was entitled to "meaningful consideration" by the BIA. 783 F.2d at 1269. On rehearing in *Hernandez-Cordero*, the en banc court did not consider this issue at all, but instead simply affirmed the BIA's finding of no extreme hardship. We do not think, therefore, that this court can properly reverse the BIA on this ground, especially in the absence of any evidence before the IJ that deportation would indeed result in the breakup of the family. Furthermore, we

---

1. *See Luciano-Vincente v. INS,* 786 F.2d 706, 708 (5th Cir.1986) ("The Board must consider these factors individually and *collectively.*") (emphasis supplied).

note that in their brief to this court, the Vargases have apparently abandoned their claim that their deportation would result in the breakup of their family, and argue instead that the difficulty of the *four* children adjusting to life in Mexico constitutes extreme hardship. Petitioners' Brief at 8. The mere possibility, or, to state the case most favorably to the Vargases, the statement by the Vargases in their brief to the BIA that their deportation would result in the breakup of their family, is, without more, insufficient to require the BIA to expressly consider this factor.

Furthermore, as *Hernandez-Cordero* illustrates, the dilemma faced by the Vargases if deported—whether to take their citizen children with them to Mexico or to separate the family—is one faced by many aliens subject to deportation. Finally, we note that both the IJ and the BIA gave consideration to the difficulty that the American-born children would face in adjusting to life in Mexico. "[O]ur review is limited to ascertaining whether *any* consideration has been given by the Board to a limited range of factors, nor are we free to undermine the discretion of the Board by parsing these factors into ever smaller subfactors and requiring the Board to consider the pieces." *Sanchez v. INS*, 755 F.2d 1158, 1160 (5th Cir.1985). The Vargases' dilemma of having both citizen and alien children was considered by the BIA. We are not at liberty to require further consideration.

*C. Other Issues:*

■ Finally, we briefly address the Vargases' argument that the BIA erred in ordering their deportation when a fifth preference petition filed by Adelaido Vargas's United States citizen brother was pending. We disagree. First, we note that the Vargases concede in their brief that the fifth preference petition was not filed until March 12, 1985, and the information required by the INS for processing the petition was not submitted until January 27, 1986. Petitioners' Brief at 10. Hence, it was not error for the IJ, who heard this petition prior to the filing of the application, not to consider the pendency of the

fifth preference petition as a hardship factor. Furthermore, a review of the record indicates that the IJ's failure to consider the alleged pendency of the fifth preference petition was not addressed by the Vargases in their brief to the BIA. Therefore, the Vargases have failed to exhaust their administrative remedies as to this issue, and we decline to consider it. *See Carnejo-Molina v. INS*, 649 F.2d 1145, 1150–51 (5th Cir. Unit A 1981); *Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir. Jan. 1981). Finally, we note that the general rule is that pending applications for immigration status do not entitle an alien to suspension of deportation. *Rubio de Cachu v. INS*, 568 F.2d 625, 628 (9th Cir.1977). Hence, we reject Vargas' argument that the BIA's failure to suspend his deportation during the pendency of the fifth preference petition amounts to an abuse of discretion.

## IV.

For the above reasons, the motion for panel rehearing filed by the INS is GRANTED, and the prior opinion in this case is VACATED. The decision of the BIA denying suspension of deportation is AFFIRMED.