UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 95-60141

CARLOS BETANCOURT,

                                              Petitioner,

                    versus

IMMIGRATION AND NATURALIZATION
SERVICE,

                                              Respondent.

Petition for Review of an Order of the
Immigration and Naturalization Service
(A19 864 960)

January 16, 1996

Before GARWOOD, WIENER and PARKER, Circuit Judges.[*]

PER CURIAM:

Petitioner seeks review of a deportation order entered by the
Board of Immigration Appeals.

**Facts and Proceedings Below**

Petitioner Carlos Betancourt-Olivares (Betancourt-Olivares),
a native and citizen of Mexico, entered the United States illegally
in 1967 at the age of twenty-one.  He was first deported in

---

[*]        Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

November of 1971 and was again deported in February of 1972.  He returned to the United States illegally shortly after his second deportation and has lived continuously in this country since that time.

In an Order to Show Cause dated July 8, 1991, the Immigration and Naturalization Service (INS) alleged that Betancourt-Olivares was in violation of 8 U.S.C. Sections 1251(a)(1)(A) & (B) because he had entered the United States without inspection in 1972 and because he was excludable at the time of his entry due to his prior deportations.  Betancourt-Olivares conceded deportability, but applied for suspension of deportation and voluntary departure.  The Immigration Court denied his request for suspension of deportation because he failed to prove that his deportation would cause extreme hardship to himself, his wife, or his ten year-old daughter.  His request for voluntary departure was granted.  Betancourt-Olivares appealed the denial of his request for suspension of deportation to the Board of Immigration Appeals (BIA).  The BIA affirmed.  Betancourt-Olivares filed a timely petition for review with this Court.

## Discussion

To be eligible for suspension of deportation pursuant to 8 U.S.C. Section 1254(a)(1), an alien must have (1) been physically present in the United States for a continuous period of at least seven years immediately preceding the application; (2) good moral character; and (3) shown that the deportation would result in "extreme hardship" to himself or to a citizen or lawful permanent

2

resident spouse, parent, or child. 8 U.S.C. § 1254(a)(1); *Hernandez-Cordero v. United States*, 819 F.2d 558, 560 (5th Cir. 1987)(en banc). The burden is on the alien to demonstrate eligibility for a suspension of deportation, and even if the eligibility requirements are met, the Attorney General retains the discretion to refuse to suspend deportation. *Hernandez-Cordero v. United States*, 819 F.2d at 560. This Court has likened the Attorney General's discretion to suspend deportation to that exercised in dispensing presidential pardons. *Id.* at 561. "Judicial review of such a highly discretionary decision is strictly limited. . . ." *Id.*

The Board of Immigration Appeals (BIA) exercises discretion as the Attorney General's delegate and is empowered to decide what constitutes extreme hardship in each case. *Id.* The BIA may narrowly define extreme hardship, and such a narrow interpretation is consistent with the "exceptional nature of the suspension remedy." *INS v. Jong Ha Wang*, 101 S.Ct. 1027, 1031 (1981). Accordingly, the BIA's substantive[1] finding regarding extreme hardship is reviewed under a strict standard for abuse of discretion. *Hernandez-Cordero v. INS*, 819 F.2d at 561-63. We may find that the BIA abused its discretion

> "only in a case where the hardship is uniquely extreme, at or closely approaching the outer limits of the most

---

[1]      "Although a court has virtually no substantive review of the BIA's 'extreme hardship' finding, we may still scrutinize the BIA's decision for procedural regularity." *Hernandez-Cordero v. INS*, 819 F.2d at 563. Betancourt-Olivares does not assert that the BIA failed to satisfy its procedural responsibilities, thus this Court does not address that matter.

3

severe hardship the alien could suffer and so severe that any reasonable person would necessarily conclude that the hardship is extreme." *Id.* at 563.

Betancourt-Olivares has lived in the United States for most of his adult life, and his wife and two of his children are United States residents.[2] He argues that he would suffer extreme hardship if he is deported because: it will be difficult to find employment in Mexico given his age and physical limitations; the adverse economic conditions in Mexico will make it difficult to support his family; he would not receive the medical care he requires; and his close-knit family would be forced to separate when his wife and children remained in the United States due to their inability to face the hardships in Mexico.

Betancourt-Olivares also argues that his wife and daughter[3] would face extreme hardship whether they return to Mexico with him or remain in the United States. If his wife and daughter remain in the United States, family separation would be an emotional and financial strain on them. Alternatively, if his wife and daughter return with Betancourt-Olivares to Mexico, they would face even more difficult hardships. Betancourt-Olivares's wife would not be

---

[2]    Betancourt-Olivares's wife and minor daughter were permanent legal residents at the time of the BIA decision; his seventeen year-old son had applied for resident status but was in the United States illegally.

[3]    Betancourt-Olivares does not limit his argument to the hardships imposed on his wife and daughter. He also claims that his deportation would cause extreme hardship to his seventeen year-old resident son. The Immigration Court properly refused to consider any hardship to the son, however, because he was present in the United States illegally at the time of the hearing. *See* 8 U.S.C. § 1254(a)(1).

4

able to obtain employment, and his daughter would be denied educational opportunities. Although all of the purported hardships are very real problems likely to befall Betancourt-Olivares and his family if he is deported, they are exactly the types of hardships many aliens face on returning to their native countries on deportation. Mere economic and social hardship which most aliens would experience upon return to their native country is insufficient to constitute the "uniquely extreme" hardship this Court requires to overturn a BIA decision.[4] *Hernandez-Cordero v. United States*, 819 F.2d at 563; *Vargas v. INS*, 826 F.2d 1394, 1397 (1987).

On the record before us, the BIA did not abuse its discretion in determining that the deportation would not result in extreme hardship to Betancourt-Olivares or his lawfully resident family. Accordingly, the BIA did not err in denying Betancourt-Olivares's application to suspend deportation.

### Conclusion

For the foregoing reasons, the order of the BIA is AFFIRMED.

---

[4] In addition, there are factors which mitigate the above-mentioned hardships. Betancourt-Olivares's mother, two married children, his sister-in-law, and his father-in-law all live in Mexico. He owns property in Mexico, and his lawfully resident daughter is bilingual. The Immigration Court also found that he is in relatively good health.